JUDGE ROBERTSON
delivered the opinion of the court.
In the summer of the year 1865 McFerran, Manifee & Co., owning a large quantity of cotton purchased in Georgia for resale in New York — to be shipped from Columbus in barges down the Chattahooche to Appalachicola, in Florida, and to be thence transhipped in the Mary Lucretia and Metropolis, ships, to the city of New York — procured from the appellee an oral contract for insurance against the perils of navigation, which the appellant reinsured to the appellee; and to fill up the uninsured gap between the landing and transhipment of the cotton at Appalachicola, the owners also obtained from the appellee, on the 10th of October, 1865, an oral contract for insurance against fire risks “on cotton at Appalachicola awaiting shipment per Mary Lwaretia and Metropolis.” On the same day the appellant made with the appellee a similar contract of reinsurance of the same cotton against the same risk. And on the 17th of October, 1865, the appellant’s agent, Muir, made in his book B, kept by • him as evidence of insurances, an "entry of the insurance and reinsurance, *85 described as insuring against a “fire rish on cotton at Appalachicola awaiting shipment.”
There is neither proof nor sufficient presumption that at the date of the entry in book B owners or insurers knew that the cotton had reached Appalachicola; but, as afterward appeared, some of it (forty-six bales) had been consumed by fire at the wharf in Appalachicola on the 6th of October, 1865.
On satisfactory proof, the appellee adjusted the loss and paid the owners its portion of the liability according to its contract of insurance, and thereafter brought this suit against the appellant for a specific execution of its contract of reinsurance and for indemnity in damages, and finally recovered a judgment, which by this appeal the appellant seeks to reverse on the following grounds, on which the action was unsuccessfully defended:
1. There was no retrospective insurance or reinsurance against fire beyond the date of the contract.
2. An oral contract for insurance was not, according to the common law, binding and enforceable.
3. If such a contract was valid at common law, the appellee’s charter modified that law in that respect by requiring a written memorial signed by the president; and consequently, as the alleged insurance was not binding, the reinsurance was not obligatory, because it only insured the original insurer against an enforceable liability.
It seems to this court that none of these grounds are sustained by the law and the facts in the case.
1. Simple insurance, prima facie, implies the existence of the thing insured at. the date of the contract. But when, as in marine policies, the thing being distant and its status unknown to either party, an insurance “lost or not lost” may bind the insurer for a loss occurring before the date of the contract. Such a provision is qifite usual in fire as well as marine insurances, and without these express words circum *86 stances may sufficiently imply the same intent. (1 Arnould on Insurance, 25; Phillips on Insurance, sec. 925; General Int. Ins. Co. v. Ruggles, 12 Wheat. 403.)
The marine insurance and reinsurance in this case were expressly retrospective, and the evident purpose of the owners and of the appellee was to protect the cotton from fire from the landing to the transhipment of it at Appalachicola. The testimony is conclusive to that effect. This authorizes the presumption that the insurance was co-extensively comprehensive; and the testimony, when carefully analyzed, preponderates decidedly that way, and does not conflict with the necessary construction of the entry in book B.
2. Although a policy, as an executed contract of insurance, is defined to be documentary and authenticated by the underwriter’s signature, yet a contract to issue a policy as an executory agreement to insure may be binding without any written memorial of it. No statute of frauds applies, and the common law does not require writing. This has been often adjudged; but for the purpose of mere authority now the cases of Taylor v. Merchants Ins. Co., 9 Howard, 390; and of Commercial Ins. Co. v. Union Mutual Ins. Co., 19 Howard, 318, are deemed sufficient. And in the case in 9 Howard the Supreme Court decided, as many other courts have also decided, not only that such an oral contract for a policy might be specifically enforced, but that a court of equity having jurisdiction for specific enforcement would, to avoid unnecessary circuity, adjudge the damages just as if a policy had been executed, and an action had been brought on it for the loss of the thing thereby insured.
3. In our judgment the appellee’s charter does not require such executory contract to be in writing. If it does it is an anomaly, for we know of no other American charter that does so require.
The seventh section of the appellee’s charter recognizes the *87 power of the corporation to insure all kinds of property against fire and marine risks, and to do all things respecting inswrance which an individual might lawfully do, “ and all other things necessary and proper to promote these objects.” As the common law allows an unincorporated citizen to make contracts of insurance, and does not require written memorials of executory agreements to insure, and the object of an act of incorporation is only to give legal individuality to a multitude of persons, and to limit the natural rights and powers, this seventh section certainly concedes the right of this corporation to make initial contracts for insurance without any writing; and we can not presume that the thirteenth section was intended to curtail that right by providing “that all policies or contracts of insurance which may be made or entered into by the said corporation shall be subscribed by the president or president pro tern., and signed and attested by the secretary, and being so signed and attested shall be binding and obligatory on the said corporation without the seal thereof, according to the tenor, extent, and meaning of such policies or contracts.”
Even according to its literal interpretation this section does not require all contracts of insurance to be in writing, but only dispenses with the corporate seal for authenticating such as are in writing whenever signed and attested as prescribed, and which can not be done as to oral contracts. It applies to the authentication of written contracts, and does not purport to change the common law as to what contracts shall be written. If such a repeal of the common law had been intended, why did not the section expressly require that all contracts, executory as well as executed, for insurance shall be in writing?
“All policies or contracts of insurance” imports executed insurances, and not executory contracts for policies or for insurance. Such initial contracts for insurance by policy are generally made by agents, and neither could be conveniently nor, so far as we know, ever have been signed *88 by the president and secretary. The policy only, m whatever form, is so signed.
The fair inference is that the object of the thirteenth section was to enlarge the common law rights of the corporation and not to curtail them, and consequently the whole aim of that section was to dispense with the corporate seal in cases in which it was previously necessary for authenticating corporate acts-in writing; and such has been the judicial construction of the like provisions in charters in other states.
A general statute of Massachusetts) applicable to all insurance companies, provides that all policies of insurance made by such companies shall be subscribed, etc., and be as obligatory as if certified by the common seal. The Supreme Court of that state construed that enactment as intended only to dispense with the corporate seal and not as requiring writing not required by the common law, and that an oral contract to issue a policy was valid and enforceable. And this was affirmed by the Supreme Court of the United States in the case in 19 Howard, supra. The slight difference in the language of the 13th section and in that of the Massachusetts act is not, in our opinion, such as to require a different interpretation of the object of the two provisions. In most of the states, as well as imthe Supreme Court of the United States, executory oral contracts to insure have been specifically enforced in equity, although executed contracts must be in writing. (See Sandford’s Chy. Rep. 408; 4 Cowen, 646; 17 Iowa, 276; 20 Ohio Rep. 529.)
And in a case published in 1 American Law Register, new series, page 116, Justice Grier adjudged, in the Western District of Pennsylvania, that equity would enforce an oral agreement for insurance even though the insurer’s charter required that “ all policies, bargains, contracts, and the agreements for insurance shall be in writing or in print, and signed by the president and attested by the secretary.” This is a peculiar case, which may be somewhat questionable, as the- charter *89 expressly required writing in policies and all other contracts for insurance. But his notion was that there was no purpose to repeal the common law, but that the legislative object was to require writing in policies and all other executed contracts ejusdem generis. However this may be, we are satisfied that the 13th section of the appellee’s charter not expressly requiring writing does not modify the common law as to oral contracts for insurance. And we are also satisfied that Muir, as appellant’s agent, had implied authority to reinsure against fire out of Kentucky as well as in it.
The consequence is that the appellee was entitled to judgment ; and the appellant, reinsuring the fire risk taken by the appellee for the owner, must be liable as for a fire and not a marine risk.
The judgment, conforming to the fire standard by which the appellee’s liability was adjusted, does not therefore appear too high; the amount does exceed the legal liability according to the law and the facts of the case.
Wherefore the chancellor’s decree is affirmed.