THE PHŒNIX INSURANCE COMPANY OF NEW YORK, and HORACE L. SPICE *vs.* SAMUEL P. RYLAND, JR., and CHAUNCEY BROOKS, trading as RYLAND AND BROOKS.

*Reformation of Contract—Parol Evidence—Contract for Insurance—Executed and Executory—Specific performance of Contract—Principal and Agent—Practice in Equity.*

Although a contract has been reduced to writing, if it be clearly shown that something has been omitted from the writing which was by the agreement of the parties to have been inserted, a Court of equity will reform the contract to make it conform to the original agreement of the parties. But in any such case the proof must be full, satisfactory and conclusively convincing to justify the Court's interfering.

A provision in the charter of an insurance company, requiring that all contracts of insurance shall be in writing, has reference only to executed contracts by which the company is legally bound to indemnify against loss, and not to the preliminary arrangements which necessarily precede the formal execution of the papers.

The law distinguishes between the preliminary contract to make insurance, or issue a policy, and the executed contract or policy. It is not essential to the validity of these initial contracts that they should be attested by the officers and seal of the company.

Application was made by R. & B. through B. & Son, insurance brokers in Baltimore, to a New York Insurance Company for the insurance of a cargo of lumber to be taken by sea from a port in Virginia to the City of New York. The company's agent in Baltimore received from the company notice of its acceptance of the risk, and thereupon communicated the fact to R., one of the applicants, and directed him to send his book around to have the insurance entered up, but requested that it be sent through B. & Son, the brokers who had initiated the negotiations. R. notified B. & Son, but through inadvertence on their part the risk was not actually entered upon the policy

book, although all parties interested supposed it had been so entered, until information of the loss of the vessel upon which the lumber was shipped had been received. The form of policy used was an open policy with a book attached in which the details of each risk were made according to the convenience of parties after the details became known. These entries were often made after the voyage had terminated, and when all risk on the part of the company had ceased. The premiums were never required when a risk was effected, but were settled for monthly, as the bills for the same were sent in, in accordance with the terms of the policy. A proviso was endorsed on the margin of the policy, that no shipment was to be considered as insured until approved and endorsed upon the book by the Baltimore agent. On a bill in equity filed by R. and B. against the insurance company and its said agent for the enforcement of said contract for insurance, it was HELD:

1st.   That evidence was admissible to show the method of dealing in respect to the risks entered in said open policy and book; the object of said evidence being, not to alter and vary the terms of a written contract, but to explain the method of making the contract, and to assist in determining whether, according to the usages of the company and its authorized agent, an agreement had been reached that such written contract should be perfected.

2nd.   That the plaintiffs were entitled to the specific enforcement of the agreement on the part of the company to insure said cargo.

3rd.   That as the entry proper to be made in the book attached to the policy, upon the acceptance of the risk, could only be made by the agent of the company, and he had selected the medium for bringing him the book, and had directed that B. & Son should be entrusted with that duty, the company, and not the plaintiffs, should bear the consequence of B. & Son's inadvertent omission.

4th.   That the voyage having been undertaken with the definite understanding that the risk was accepted, and should be entered, the company could not escape the consequences of the agreement simply because the entry was not actually made.

5th.   That the plaintiffs being entitled to a decree requiring the omitted entry to be made, they were also entitled to full relief by a decree for the payment of the loss insured against.

Phœnix Ins. Co, *vs.* Ryland and Brooks.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed by the appellees against the appellants. The case is stated in the opinion of the Court. The prayer of the bill is as follows:

To the end, therefore, that said Horace L. Spice may be required to enter in said book, or endorse on said policy under date of November 3rd, 1886, $2,589.19 insurance on the cargo of lumber on board the schooner Sarah A. Boice from Suffolk, Virginia, to the port of New York, in the State of New York, for the premium of $46.55, and that the said Phœnix Insurance Company may be required to compel said Spice, as its agent and on its behalf, to make said entry.

Second. That the Phœnix Insurance Company shall pay to your orators the sum of $2,589.19, with such interest thereon as to the Court may seem proper.

Third. That your orators may have such other and further relief as their case may require, and as the Court is competent to give in the premises.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, IRVING, BRYAN, and McSHERRY, J.

*John R. Kenly,* for the appellants.

The exception of the appellants to the mass of testimony offered by the complainants to show the *custom or course of dealing* between the parties to this cause, was taken, because the open policy of insurance, issued by the appellant, the Phœnix Insurance Company, and delivered to the complainants, and accepted by them, with a book thereto attached as a part thereof, contained an express stipulation that " no shipment was to be considered as insured until approved and endorsed on the policy by Horace L. Spice; " and it being conceded that no such risk as that named in the

bill, on the "Sarah A. Boice" was approved or endorsed on the policy, or the book thereto attached as a part thereof, this offer of such testimony and the introduction of such testimony was an effort to make an alleged custom or course of dealing override law, and was inadmissible under the contract of insurance offered in evidence by the complainants themselves.

In the case of *Willard vs. Tayloe*, 8 *Wallace*, 73, Justice FIELD says, in delivering the opinion of the Court: "When parties have reduced their contracts to writing, conversations controlling or changing their stipulations are, in the absence of fraud, no more received in a Court of equity than in a Court of law."

No particular usage or custom can be admitted to alter or impair a clear and express written contract of the parties. *Schooner Reeside*, 2 *Sumner's Rep.*, 567; 2 *Kent's Comm.*, 555, (4th Ed.)

*Archibald H. Taylor*, and *John H. Thomas*, for the appellees.

We have merely asked by our proceeding that the defendants shall be made to execute the specific contract in writing which they agreed to execute, viz., to enter in the open policy book the terms of the insurance, that all parties to the transaction thought had actually been entered. Equity will assist in the correction of a mutual mistake. The Court will correct the "mistake" in a deed already executed, or supposed to be executed. In the celebrated case of *Alexander vs. Ghiselin*, 3 *Gill*, 138, this Court decided that an agreement for a mortgage *without* the formalities to constitute a mortgage, would be enforced in equity even against others than the contracting parties.

It is only as incidental to this relief claimed here, according to the custom and methods of a Court of equity, to avoid circuity of action, that the payment

of the money becoming due under the contract thus to be executed, may be decreed, and is, therefore, prayed. Having taken jurisdiction for one purpose equity takes it for all, and grants full relief in one and the same suit. 1 *Wood on Fire Ins.*, 33 and 45, note 5; *Tayloe vs. Merchants Co.*, 9 *Howard*, 390; *Jones vs. Provincial Ins. Co.*, 16 *U. C. Q. B.*, 474; *Dinning vs. Phenix Ins. Co.*, 68 *Ill.*, 414; 1 *Story's Eq. Jurisp.*, chap. 4, sec. 78, note *a*, and secs. 155, 156, 166; *Hall and Gill vs. Clagett*, 2 *Md. Ch. Dec.*, 151; *Gerrish vs. German Ins. Co.*, 55 *N. H.*, 355; *Kelly vs. Commercial Ins. Co.*, 10 *Bos.*, 82; *Eames vs. Home Ins. Co.*, 94 *U. S.*, 627, 630; *Delaware State F. & M. Ins. Co., vs. Shaw*, 54 *Md.*, 552–4–5; *Ben. Franklin Ins. Co. vs. Gillett*, 54 *Md.*, 212; *Delaware State Fire Ins. Co. vs. Gillett*, 54 *Md.*, 219.

At common law a contract of insurance need not be in writing, and the Supreme Court of the United States has said, and frequently repeated, "that a contract of insurance can be made by parol, unless prohibited by statute, has been too often decided to leave it an open question." *Relief Fire Ins. Co. vs. Shaw*, 94 *U. S.*, 574; 1 *Wood on Fire Ins.*, sec. 4; *Post vs. Ætna Ins. Co.*, 43 *Barb.*, 361; *Ellis vs. Albany City Fire Ins. Co.*, 50 *N. Y.*, 402; *Commercial Mut. Marine Ins. Co. vs. Union Mut. Ins. Co.*, 19 *Howard*, 327; *Franklin Fire Ins. Co. vs. Colt*, 20 *Wall.*, 560; *Sanborn vs. Fireman's Ins. Co.*, 16 *Gray*, 448.

In a Maryland case touching the subject, this doctrine is quoted and not denied; and while denying the right to an action at law in that case, this Court plainly intimated that the plaintiff might have found adequate "remedy in another form of action or another forum." *Delaware State F. & M. Ins. Co. vs. Shaw*, 54 *Md.*, 555.

But the distinction has always been kept clear between a contract of insurance and a contract *for* insurance or an agreement to insure, *which latter is our case,*

and may be made by parol and enforced by a Court of equity, although the company is prohibited, by its charter or otherwise, to contract otherwise than under seal. *Commercial Mut. M. Ins. Co. vs. Union Mut. Ins. Co.*, 19 *How.*, 318–321; *Franklin Fire Ins. Co. vs. Colt*, 20 *Wall.*, 566; *Eames vs. Home Ins. Co.*, 94 *U. S.*, 627; *Fry on Spec. Perf.*, (*Am. Notes*,) *par.* 186, *p.* 147; *Pomeroy on Contracts*, *p.* 95; 1 *Wood on Fire Insurance*, 16, 29, *note* 1, 30, 31 (*note* 1), 32 (*note*), 33–35; *Constant vs. Allegheny. Ins. Co.*, 3 *Wall.*, *Jr.*, 313, 315, 316; *Mactier vs. Frith*, 6 *Wend.*, 103; *Hamilton vs. Lycoming Ins. Co.*, 5 *Penn.*, 342; *Adams vs. Lindsell*, 1 *Barn. & Ald.*, 681; *National Fire Ins. Co. vs. Crane*, 16 *Md.*, 287, 295.

To avoid circuity of action, a Court of equity will decree at once for the amount of money which would be recoverable under the policy if executed. *Tayloe vs. Merchants Fire Ins. Co.*, 9 *How.*, 390; *Franklin Fire Ins. Co. vs. Colt*, 20 *Wall.*, 566; *Ben. Franklin Ins. Co. vs. Gillett*, 54 *Md.*, 212.

The premium need not be paid if it is only agreed to be paid, and is certain or can be made certain by the terms of the agreement. For good illustrations of this case and instances where the premiums were not paid, but merely agreed to be paid, see *Commercial Mut. Marine Ins. Co. vs. Union Mut. Ins. Co.*, 19 *Howard*, 321; *First Baptist Church vs. Brooklyn Ins. Co.*, 19 *N. Y.*, 305; *Post vs. Ætna Ins. Co.*, 43 *Barb.*, 361; *Ide vs. Phœnix Ins. Co.*, 2 *Bissell*, 334; *Taylor vs. Germania Ins. Co.*, 2 *Dillon*, 283; *Baubie vs. Ætna Ins. Co.*, 2 *Dillon*, 156; *Audubon vs. Excelsior Ins. Co.*, 27 *N. Y.*, 216; *City of Davenport vs. Peoria Ma. & F. Ins. Co.*, 17 *Iowa*, 276.

It is perfectly competent for a company at its home office to receive or dispense with the agent's otherwise necessary approval, by action which implies this, and

to contract to grant its own contract of insurance, with or without, or perfectly independently of, the approval of the agent designated for that duty. *Pechner vs. Phœnix Ins. Co.*, 65 *N. Y.*, 209; *First Baptist Church vs. Brooklyn Fire Ins. Co.*, 19 *N. Y.*, 305; *Blanchard vs. Trim*, 38 *N. Y.*, 225.

While no such point of defence was suggested below, we desire to note, that to refuse to pay the claim is to waive all rights to preliminary notice and proofs. *Post vs. Ætna Ins. Co.*, 43 *Barb.*, 331; *Ide vs. Phœnix Ins. Co.*, 2 *Bissell*, 334; *Newton vs. Mut. Ben. L. Ins. Co.*, 2 *Dillon*, 165; *Tayloe vs. Merchants Fire Ins. Co.*, 9 *How.*, 403.

Courts have decided, that in these cases common honesty may require an agent to owe a higher duty to the customer to whom he has pledged his own faith and his company's, than to his company. Thus where an agent delivered the policy after a loss, even in the face of the order of his company, and after the insured had had notice that his agency had terminated, the delivery was upheld, the agent justified and the company left bound. *Lightbody vs. N. Am. Ins. Co.*, 23 *Wend.*, 18; *Hallock vs. Commercial Ins. Co.*, 26 *N. J. L.*, 268; *Kohne vs. Ins. Co.*, 1 *Wash. Cir. Ct.*, 93; *City of Davenport vs. Peoria Ma. & F. Ins. Co.*, 17 *Iowa*, 276.

IRVING, J., delivered the opinion of the Court.

The bill in this case seeks the decree of a Court of equity for the enforcement of a contract for the insurance of a cargo of lumber which was to be taken by sea from Suffolk, Va., to New York City.

In October, 1886, the appellees applied to the appellant, an insurance company in New York, for the insurance of a cargo of lumber, which was being loaded on the Schooner Sarah A. Boice, at Suffolk, Va., and the destination of which was not fixed, but awaited

the results of negotiation for insurance; it being the design of the appellees to bring the cargo by inside route to Baltimore, if insurance could not be effected; and to send to New York by sea, if it could be insured. The negotiations were conducted through Birckhead & Son, insurance brokers, with Mr. Spice, the general agent of the appellant in the city of Baltimore. The rate of insurance was agreed upon satisfactorily, and the application was submitted by Spice to the insurance company in New York. The application was rejected, because the vessel was supposed to be old and unseaworthy. This being communicated to the appellees, they informed Spice that their information was incorrect, as the appellees were informed, the vessel had undergone thorough repair and was not unseaworthy, as she had been represented to the company to be. Being referred to reliable sources of information, Spice sought for it, and learned that the vessel had been rebuilt, and was a proper subject for insurance. This information was telegraphed to the home office in New York City, which telegraphed Spice, its agent in Baltimore, "on the strength of your explanation we accept Schooner Sarah A. Boice." This telegram was dated November the first, 1886. Spice communicated to Ryland, one of the appellees, the result of this correspondence with his company, and directed him to send his book around to have the risk entered up, but requested that it be sent through Birckhead & Son, the brokers who had initiated the negotiations for this risk. Spice himself so testifies. Ryland notified Birckhead & Son, but inadvertently the risk was not actually entered upon the policy book, although *all parties interested* supposed it had been entered, until information of the loss of the Boice was received, and this suit is to compel the entry of the risk in the policy book and the payment of the loss.

Phœnix Ins. Co. *vs.* Ryland and Brooks.

The form of policy, used in this case, was what is known as an open policy, "with book attached in which the details of each risk were made according to the convenience of parties, after the details became known. These entries, as the book itself and other evidence shows, were often made after the voyage had terminated, and when all risk on the part of the company had ceased. The premiums were never required when a risk was effected, but were settled for monthly, as the bills for the same were sent in, in accordance with the terms of the policy. The policy provided that no shipment was to be considered as insured until approved and endorsed upon the book by Spice, its Baltimore agent." This proviso is endorsed on the margin of the policy.

Exception has been taken to the admissibility of the evidence touching the method of dealing in respect to the risks entered in this open policy and book; but it is very clear that the usages of the company in effecting their contracts through an open policy and book, and its agent in a city distant from the home office, must, of necessity, be receivable, in order to apply correctly the principles of law involved for the protection of either party to the contract made or sought to be made, as the case may be. The exception is based on the theory that it is offered to alter and vary the terms of a written contract, whereas that is not its object or effect. The object was to explain the method of making the contract, and to assist in determining whether according to the usages of the company and its authorized agent, an agreement had been reached that such written contract should be perfected. The Judge below did not specifically pass upon this exception, but by implication he overruled it, for he treated the evidence as before him in deciding the case, and we think he was entirely right in so doing. The exceptions on the part

of the appellees we have not found it necessary to consider, for if the exceptions were overruled it would not affect our conclusion respecting the appeal.

It is well established law that upon clear proof that a contract has been made to do something, the consummation of which involves the execution of a written instrument, which is afterwards refused to be made, a Court of equity will coerce the execution of the written contract which the parol evidence has shown was agreed upon. And, although the contract has been reduced to writing, if it be clearly shown that something has been omitted from the writing which was by the agreement of parties to have been inserted, a Court of equity will reform the contract to make it conform to the original agreement of parties. But in any such case the proof must be full, satisfactory and conclusively convincing to justify the Court's interfering. In *Alexander vs. Ghiselin,* 5 *Gill,* 138, our predecessors coerced the specific performance of a contract to create a lien, which could only be made legally effectual by a regularly executed, acknowledged and recorded mortgage. And in *Ben. Franklin Ins. Co. vs. Gillett,* 54 *Md.,* 212, this Court reformed a contract of insurance by inserting a statement into the written instrument which had been omitted, and which was not discovered until *after a loss under the policy* had occurred.

It is clearly stated in 1 *Wood* on *Fire Insurance, page* 29, that contracts *to* insure will be enforced in equity, and numerous decisions are cited in support of this statement of the law. A contract of insurance is an executed contract which can be enforced at law. A contract to insure is executory and requires the interposition of equity to give effect to the agreement of parties. 1 *Wood on Fire Insurance,* 29, 30, 31. " A contract of insurance is in writing, a contract *to* insure

Phœnix Ins. Co. *vs.* Ryland and Brooks.

may be by parol." *Ib.*, 32; *Tayloe vs. Merchants' Fire Ins. Co.*, 9 *Howard*, (*U. S.*,) 390; *Commercial Mutual Marine Ins. Co. vs. Union Mutual Ins. Co.*, 19 *Howard*, (*U. S.*,) 318; *Insurance Co. vs. Colt*, 20 *Wall.*, (*U. S.*,) 566; *Security Fire Ins. Co. of New York vs. Kentucky Marine and Fire Ins. Co.*, 7 *Bush*, 81. In *Colt's Case*, 20 *Wallace*, the charter of the company required that all contracts of insurance shall be in writing, but the Court said that this provision had reference only to executed contracts by which the company was *legally* bound to indemnify against loss, and not to the preliminary arrangements which necessarily precede the formal execution of the papers by the officers of the company. Justice FIELD in announcing the opinion in this case said, " it would be impracticable to carry on its business in other cities and States, or at least the business would be attended with great embarrassment and inconvenience, if such preliminary arrangements required for their validity and efficacy, the formalities essential to the executed contract. The law distinguishes between the preliminary contract to make insurance or issue a policy, and the executed contract or policy. And we are not aware that in any case, either by usage, or the by-law of any company, or by any judicial decision, it has ever been held essential to the validity of these initial contracts that they should be attested by the officers and seal of the company. Any usage or decision to that effect would break up or greatly impair the business of insurance as transacted by agents of insurance companies." This case cites with approval *The Security Insurance Company's Case* in 7 *Bush*, 81, where the same principles are strongly announced. In *Colt's Case*, as in the case under consideration by us, credit was allowed for the payment of the premium, but the Supreme Court said " it was an indulgence which the agents were authorized

Phœnix Ins. Co. *vs.* Ryland and Brooks.

by general usage to give, and that it did not impair the preliminary contract. That being valid could be enforced in a Court of equity." These principles and decisions are entirely conclusive of the right of the appellees to the specific enforcement of the agreement on the part of the appellant to insure the cargo of the Sarah A. Boice. There is an entire agreement between all the witnesses on both sides as to the material facts of this case. In the main they have already been re-cited in the statement of the case. After the insurance company was notified of the seaworthiness of the schooner and her full repair, the company unequivo-cally accepted the risk, by telegram to its agent Spice, who informed Ryland and directed the book to be sent up for the entry to be made. That could not be made unless the risk was accepted, and that direction was in itself an acceptance if the other evidence was not so positive on the subject. Spice only could make that entry. The insured could not. Spice having selected the medium for bringing him the book, and having directed for reasons satisfactory to him that Birckhead & Son should be entrusted with that duty, the com-pany should bear the consequence and blame of Birck-head & Son's inadvertent omission. The appellees certainly ought not to suffer for it. They did not know it was not entered, but allowed the voyage to be undertaken, upon faith of Spice's acceptance of the risk and agreement to enter it in the policy book. In-deed all parties supposed the entry was actually made, until the loss was discovered, when Spice refused to make the entry, notwithstanding the premiums were tendered and the demand made for its entry. On the 26th of November he had the book and entered the risk of the Rambo, another boat of appellees, which had been accepted on the 3d of November, and which had, when entered, successfully completed her trip; but he

did not enter the Boice because he heard the boat was lost. In entering the Rambo at the time he did, he indicated in the act, the uniform practice which was observed in their dealings with the appellees and their policy book; and in taking the premium for the Rambo when she had successfully completed her voyage showed that usage required that he should enter the Boice, in pursuance of her acceptance at risk, although she was reported as lost. The voyage having been undertaken with the definite understanding that the risk was accepted and should be entered, the company cannot be allowed to escape the consequences of the agreement, simply because the entry was not actually made. Its entry must be coerced. In so decreeing the Court below also decreed the payment of the loss, the extent of which was fully shown and was uncontradicted. That was right also. All the authorities we have cited as establishing appellees' right to specific performance in the completion of the instruments are equally conclusive as to the right and propriety of administering full relief by decree of payment of loss when the evidence of its extent is satisfactory, as it is here. The decree of the Circuit Court will be affirmed.

*Decree affirmed.*

(Decided 23d November, 1888.)