**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ARIS MARDIROSSIAN,
                    *Plaintiff-Appellant,*

v.

THE PAUL REVERE LIFE INSURANCE
COMPANY,
                    *Defendant-Appellee.*

No. 01-1922

ARIS MARDIROSSIAN,
                    *Plaintiff-Appellee,*

v.

THE PAUL REVERE LIFE INSURANCE
COMPANY,
                    *Defendant-Appellant.*

No. 01-1923

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-99-1192-AW)

Argued: February 25, 2002

Decided: April 17, 2002

Before LUTTIG and GREGORY, Circuit Judges, and
Henry M. HERLONG, Jr., United States District Judge
for the District of South Carolina, sitting by designation.

_____

Vacated and remanded with instructions by published opinion. Judge
Luttig wrote the opinion, in which Judge Gregory and Judge Herlong
joined.

**COUNSEL**

**ARGUED:** Albert David Brault, BRAULT, GRAHAM, SCOTT & BRAULT, L.L.C., Rockville, Maryland, for Appellant. Derek Barnet Yarmis, FUNK & BOLTON, P.A., Baltimore, Maryland, for Appellee. **ON BRIEF:** Joan F. Brault, James M. Brault, BRAULT, GRAHAM, SCOTT & BRAULT, L.L.C., Rockville, Maryland, for Appellant. Bryan D. Bolton, FUNK & BOLTON, P.A., Baltimore, Maryland, for Appellee.

---

**OPINION**

LUTTIG, Circuit Judge:

This suit arises out of the Paul Revere Insurance Company's ("Paul Revere") refusal to issue an insurance policy to Aris Mardirossian. The district court granted summary judgment in favor of Paul Revere and Mardirossian appeals.

I.

Aris Mardirossian sought to purchase disability insurance from Paul Revere. Prior to submitting his application, Mardirossian told his insurance agent, licensed by Paul Revere, that he was diagnosed with and treated for sarcoidosis (a disease involving the formation of tumor-like nodules). At the time of application for coverage, the disease had gone into remission. According to Mardirossian, following several conversations between Mardirossian and his agent, and between the agent and Paul Revere, the insurance company advised that the policy would issue despite his medical condition. J.A. 24 (Amended Complaint, ¶ 5). Mardirossian alleged that "[t]here was nothing remaining to be done but file the application with Paul Revere and Paul Revere was to send the policy with the terms agreed upon. Paul Revere's managing agent promised to do so." J.A. 25 (Amended Complaint, ¶ 6). However, upon requesting and obtaining an additional blood sample from Mardirossian, Paul Revere declined to issue the policy and returned his premium deposit.

Mardirossian filed a complaint with the Maryland Department of Insurance, which has yet to render any determination on the merits. He then filed a complaint in state court, requesting, inter alia, "that [the] Court enter a judgment of specific performance ordering Paul Revere to issue the policy as applied for by Mardirossian," J.A. 27. Paul Revere removed the suit to federal court. It then moved for summary judgment, which the district court granted on Mardirossian's claim for specific performance. The court denied as moot Paul Revere's counterclaim, which alleged that even if Mardirossian were granted specific performance, Paul Revere was entitled to rescind his insurance coverage because Mardirossian failed to disclose a material fact relating to his health, namely, his back condition.

## II.

The district court concluded that Mardirossian sought to compel Paul Revere to issue a disability insurance policy that it allegedly agreed to provide Mardirossian despite his sarcoidosis. Said the court, "[i]n order for the Plaintiff to properly receive the remedy that he is asking for, he must first await the ruling from the Insurance Commissioner. After such time, the decision of the Insurance Commissioner can be appealed to the proper court." J.A. 183. The court then granted summary judgment to Paul Revere "because the remedy sought, enforcement of the alleged oral agreement, is under the exclusive jurisdiction of the Maryland Insurance Commissioner. The Plaintiff has failed to exhaust his administrative remedies in seeking specific performance." *Id.*

As a threshold matter, in order for the grant of summary judgment to be a proper disposition here, the court had to reach the merits of Mardirossian's claim. That the court did not do. J.A. 182 ("The Court recognizes that there is a genuine dispute as to whether a valid contract was formed. . . . However, the Court does not need to reach this issue in order to reach a conclusion."). Instead, it based its ruling on the exhaustion requirement. Thus, we vacate the grant of summary judgment.

However, we cannot simply remand the case for consideration of the merits because, as the district court itself seemed to recognize, there is an antecedent issue of jurisdiction. That is, if the Maryland

Insurance Code provides either the exclusive remedy or the primary remedy (requiring that a claimant first invoke and exhaust the administrative remedies), Mardirossian is improperly before the court and the court should dismiss for lack of subject matter jurisdiction. If, however, the remedy is concurrent, the court should proceed to rule on the merits.*

The nature of the administrative remedy depends largely on the existence of a judicial remedy and its relationship to the underlying statutory scheme. *Zappone* v. *Liberty Life Ins. Co.*, 349 Md. 45, 62 (1998) (a remedy is *exclusive* "only when the Legislature has indicated that the administrative remedy is exclusive *or when there exists no other recognized alternative statutory, common law, or equitable cause of action*") (emphasis added); *id.* at 65 ("Where *[a] judicial cause of action is wholly or partially dependent upon the statutory scheme* which also contains the administrative remedy, or upon the expertise of the administrative agency, the Court has usually held that the administrative remedy was intended to be *primary* and must first be invoked and exhausted before resort to the courts.") (emphasis added); *id.* at 65-66 ("[W]here the alternative judicial remedy *is entirely independent of the statutory scheme* containing the administrative remedy, and the expertise of the administrative remedy is not particularly relevant to the judicial cause of action, the Court has held that the administrative remedy is [*concurrent*].") (emphasis added).

According to the complaint, Mardirossian sued for specific performance, alleging that there was an oral contract between him and Paul Revere. J.A. 16-17. Mardirossian argues that his claim for specific performance is a straightforward contract claim, wholly independent of any administrative remedies available under the Code.

In support, he cites *Phoenix Ins. Co.* v. *Ryland*, 16 A. 109 (Md. 1888), and *National Fire Ins. Co.* v. *Tongue, Brooks & Co.*, 61 Md. App. 217 (1985). However, *Tongue* has nothing to do with the availability of specific performance as a remedy for oral insurance contracts and preemption of causes of action, such as Mardirossian's, by

---

*It is unclear whether the court held that the Maryland Insurance Code provides the exclusive remedy for Mardirossian's claim or a primary remedy; for reasons that follow, we need not resolve this ambiguity.

the Insurance Code. *See id*. at 225 ("We are dealing here with a basic contract issue of offer and acceptance.").

And while *Ryland* addresses the question before us, as it affirmed the grant of specific performance of an oral contract to issue an insurance policy (covering cargo), *Ryland* predates the enactment of the Maryland Insurance Code, which may have modified or supplanted Maryland's common law of contracts. For instance, certain provisions of the Maryland Insurance Code that prohibit unfair trade practices and give the Commissioner authority to enjoin and restrain such practices, *see* Md. Code Ann. (Insurance) §§ 27-103, 104, 105, may preempt or render secondary (that is, require exhaustion of administrative remedies before seeking judicial relief) the traditional equitable remedy of specific performance.

We are not persuaded, however, by Paul Revere's assertion that *Muhl* v. *Magan*, 313 Md. 462 (1988), conclusively resolves the question of the availability of specific performance on an oral contract to issue a disability policy. In *Muhl*, the court noted that "[defendant's] objective is to have [the insurance company] compelled to enter into a contract with him, a form of relief generally unknown to the common law." *Id*. at 480. We believe, however, that *Muhl* is simply not on point. In that case, the defendant filed a complaint with an Insurance Commissioner, challenging the insurer's refusal to cover his medical practice (there was no allegation of the existence of a contract). The defendant explicitly based his complaint on section 234A of Subtitle 15 of the Insurance Code (unfairness or discrimination in underwriting), *id*. at 470, which provides that "[n]o insurer . . . shall . . . refuse to underwrite . . . a particular insurance risk . . . except by the application of standards which are reasonably related to the insurer's economic and business purposes." And, indeed, there is no common law cause of action against an insurance company for its failure to calculate objectively the probability of an adverse effect upon the insurer, which is precisely what section 234A of the Code requires and what was at issue in *Muhl*. Here, by contrast, Mardirossian's complaint, at least on its face, is not based on any section of the Insurance Code, but rather appears to allege a wrong (failure to perform on an oral contract) that has been traditionally vindicated by the common law.

In the absence of any authority bearing directly on the question before us, we remain uncertain whether Maryland common law does in fact provide a cause of action for the wrong Mardirossian alleges. Accordingly, we vacate the grant of summary judgment and remand this case to the district court with instructions to certify the following question to the Maryland Court of Appeals:

> Does Maryland law provide a judicial cause of action, entirely independent of the Maryland Insurance Code, for a claim to compel specific performance on an oral contract for disability insurance?

Once the court receives the response, it will be able to ascertain, by applying the framework of *Zappone*, whether the Maryland Insurance Code provides an exclusive, primary or concurrent remedy.

Depending on the disposition of this claim, the court should also reconsider whether Paul Revere's counterclaim is indeed moot.

## *CONCLUSION*

For the foregoing reasons, we vacate the grant of summary judgment, and remand with instructions for certification.

*VACATED AND REMANDED WITH INSTRUCTIONS*