831 A.2d 60

Aris MARDIROSSIAN

v.

The PAUL REVERE LIFE INSURANCE CO.

Misc. No. 2, Sept. Term, 2002.

Court of Appeals of Maryland.

Aug. 28, 2003.

Albert D. Brault (Joan F. Brault, Brault, Graham, Scott & Brault, LLC, on brief), Rockville, for appellant.J. Joseph Curran, Jr., Atty. Gen., Randolph Stuart Sergent, Asst. Atty. Gen., Baltimore, Amicus Curiae for appellant.

Bryan D. Bolton (Derek B. Yarmis, Hisham M. Admin, Funk & Bolton, P.A., on brief), Baltimore, for appellee.

Argued before BELL, C.J., ELDRIDGE, WILNER, CATHELL, HARRELL, BATTAGLIA and LAWRENCE F. RODOWSKY (retired, specially assigned), JJ.

ELDRIDGE, J.

█ In this Certified Question case, pursuant to the Maryland Uniform Certification of Questions of Law Act, Maryland Code (1974, 2002 Repl.Vol.), §§ 12–601 through 12–613 of the Courts and Judicial Proceedings Article and Maryland Rule 8–305, the United States District Court for the District of Maryland has certified the following question of Maryland law:

"Does Maryland law provide a judicial cause of action, entirely independent of the Maryland Insurance Code, for a claim to compel specific performance on an oral contract for disability insurance?"

Our answer to the question shall be "yes."

I.

The Certification Order recites that the facts are in dispute and that, therefore, the Order sets forth the facts in a light most favorable to the plaintiff Mardirossian. In 1995 and 1996, the defendant, The Paul Revere Life Insurance Company ("Paul Revere"), issued two disability income insurance policies to Aris Mardirossian. In 1997, Mardirossian decided to procure additional disability income insurance coverage. Subsequently, in November 1997, Mardirossian was diagnosed with sarcoidosis, a disease of unknown cause characterized by the presence of small tumor-like masses of tissue containing inflammatory cells.

In January 1998, Mardirossian's long-time insurance broker, Robert Weigert, contacted Mardirossian to discuss the possibility of obtaining additional disability income insurance coverage. At this time, Mardirossian told Weigert that he had been diagnosed with sarcoidosis. Mardirossian also discussed an application he had submitted to another insurance company, MetLife, which had just been rejected based on his history of sarcoidosis. Mardirossian explained to Weigert that, before

he submitted another insurance application, he wanted to be certain that his history of sarcoidosis would not be a disqualifying factor. Thus, Mardirossian asked Weigert to ascertain from Paul Revere, in advance of submitting a formal application, whether his history of sarcoidosis would be a problem. Paul Revere offered a "Pre-underwriting Consideration" review process, which allowed an applicant to inquire whether his or her application would be accepted or rejected in advance of submitting a formal application. The review process sometimes included a review of the future applicant's financial status and medical history.

Soon thereafter, Weigert submitted Mardirossian's financial information to Paul Revere for a pre-underwriting consideration review. Based on the information submitted, Paul Revere's underwriting department prepared a series of proposals for insurance coverage. Weigert then contacted Tim Tehan, a managing agent at Paul Revere, to advise him of Mardirossian's sarcoidosis diagnosis and of Mardirossian's full recovery.[1] Tehan responded that he would have to check with the underwriting department to determine whether Mardirossian's history of sarcoidosis would be an issue.

Subsequently, Weigert contacted Mardirossian to inform him that Tehan stated that "sarcoidosis would not be a problem." Weigert also mentioned Tehan's suggestion that Mardirossian submit to a medical examination. On May 1, 1998, Paul Revere's underwriting department approved the final proposal in Paul Revere's "Pre-underwriting Consideration" review process. The proposal provided for $6,150 per month in benefits until age 67, at an annual cost of $4,369.06. Both Weigert and Mardirossian understood, however, that a formal application would have to be submitted to and underwritten by Paul Revere.

Based on the assurances he received from Paul Revere, on August 4, 1998, Mardirossian met with Weigert to complete

---

1. None of the medical records concerning Mardirossian's history of sarcoidosis had been submitted to Paul Revere until the submission of his formal application.

the first part of his formal application for additional insurance coverage from Paul Revere. The application requested the same terms which had been approved in the May 1, 1998, final proposal, disclosed that Mardirossian had been diagnosed with "minor sarcoidosis," and asserted that Mardirossian had experienced a "full recovery all gone!" The application was executed by Mardirossian and submitted to Paul Revere, along with a premium deposit check in the amount of $1,040.

Thereafter, a physician's assistant met with Mardirossian at his home to complete part II of the application, which was the medical part. It was reported on part II that Mardirossian had been diagnosed with sarcoidosis, that the "condition cleared," and that it was "last checked July 1998—chest x-ray normal." After answering all the physician's assistant's questions, Mardirossian signed the application on August 31, 1998, and submitted it to Paul Revere, together with a check in the amount of the first two months' premium payments.

Based on the amount of coverage with Paul Revere that Mardirossian already had and the additional amount of coverage for which he was applying, Paul Revere's underwriting department requested a second medical examination and blood test, along with copies of Mardirossian's medical records. These additional items were furnished in September 1998.

On September 21, 1998, Paul Revere's underwriting department denied Mardirossian's application in light of his history of sarcoidosis. The decision was based on Paul Revere's underwriting guideline for sarcoidosis, which provides that an application must be denied if sarcoidosis is "generalized or present." In a letter dated September 28, 1998, Mardirossian received notice that his application was rejected because of his history of sarcoidosis. Paul Revere also enclosed a refund check in the amount of $1,040.

On October 14, 1998, Mardirossian's attorneys sent Paul Revere a letter demanding that Paul Revere "issue the policy forthwith." The letter also contained the refund check sent by Paul Revere, along with another check in the amount of $4,280.78, representing "the entire first annual premium."

Both checks were returned to Mardirossian by Paul Revere on October 29, 1998.

Mardirossian filed a complaint with the Maryland Insurance Administration ("MIA") against Paul Revere in October 1998. The investigator assigned to Mardirossian's complaint, Suzanne Ballogdajan, consulted with the Chief Enforcement Officer for the MIA, John Riggle. Riggle indicated he would not be interested in pursuing an investigation, because it would be inappropriate to hold an insurance company responsible for issuing a disability policy based upon an agent's indication that the policy would be issued. Ballogdajan subsequently informed Mardirossian of the MIA's "preliminary finding." Mardirossian did not pursue the administrative complaint to a higher level within the MIA.[2]

On March 23, 1999, Mardirossian filed a complaint against Paul Revere in the Circuit Court for Montgomery County. The complaint sought specific performance of the alleged oral contract, pursuant to which Paul Revere purportedly agreed that, upon receipt of an application and premium deposit, it would issue a disability insurance policy to Mardirossian based upon the terms previously approved by its underwriting department, notwithstanding his history of sarcoidosis.

Pursuant to 28 U.S.C. § 1441, Paul Revere removed the case to the United States District Court for the District of Maryland. Mardirossian's amended complaint asserted claims for specific performance (count I), statutory unfair trade practices (count II), negligent misrepresentation (count III), and fraud (count IV). On October 4, 1999, the District Court granted Paul Revere's motion to dismiss as to counts II and IV. On November 13, 2000, Paul Revere filed a counterclaim seeking an order rescinding any disability insurance policy or other contract that may have existed between the parties, and declaring such policy or contract void *ab initio* based on material misrepresentations in Mardirossian's application.

---

**2.** Under Maryland Code (1997, 2002 Repl.Vol.), §§ 27–103 and 27–104 of the *Insurance Article, Mardirossian could have requested an administrative hearing.*

Following discovery, Paul Revere moved for summary judgment on the remaining claims. In June 2001, the District Court granted Paul Revere's motion for summary judgment as to counts I and III of the amended complaint and denied as moot Paul Revere's motion for summary judgment as to the counterclaim. The court found that there were factual disputes which precluded a grant of summary judgment on most of the grounds raised in the motion. Nevertheless, the court concluded that the remedies provided by Maryland Code (1997, 2002 Repl.Vol.), §§ 27–103 through 27–105 of the Insurance Article, are exclusive or primary and must first be exhausted.[3] Therefore, the court reasoned, Mardirossian could not pursue his specific performance claim. The court entered summary judgment in favor of Paul Revere.

Both parties appealed to the United States Court of Appeals for the Fourth Circuit. On April 17, 2002, the United States Court of Appeals vacated the District Court's order granting summary judgment and remanded the case to the District Court with instructions to certify the previously-stated question of law to this Court. *Mardirossian v. Paul Revere Life Ins. Co.*, 286 F.3d 733 (4th Cir.2002). The District Court's Certification Order designated Mardirossian as the appellant and Paul Revere Life Insurance Company as the appellee.

## II.

The appellant, Mardirossian, argues that, under Maryland common law, an oral contract to provide an insurance policy is enforceable. In addition, relying heavily on *Zappone v. Liberty Life Ins. Co.*, 349 Md. 45, 706 A.2d 1060 (1998), Mardirossian contends that the remedies provided under §§ 27–103 through 27–105 of the Maryland Insurance Code are neither exclusive nor primary but, rather, are fully concurrent. Therefore, Mardirossian concludes, it was not necessary for him to exhaust administrative remedies before seeking the judicial remedy of specific performance.

---

**3.** Unless otherwise stated, all statutory references are to Title 27 of the Insurance Article of the Maryland Code (1997, 2002 Repl.Vol.).

■ The appellee, Paul Revere, urges this Court either to decline to answer the certified question or to answer it in the negative, arguing that the facts establish that no oral contract existed. Paul Revere claims that "[t]he mere fact that Mr. Weigert told Mr. Mardirossian that Mr. Tehan said sarcoidosis would not be a problem is legally insufficient to prove the existence of a contract." The insurer contends that, because Weigert was a broker representing Mardirossian, "his statements and assurances to Mr. Mardirossian could not bind Paul Revere." Therefore, the appellee argues that Paul Revere did not mutually assent to a contract.

■ The appellee's arguments miss the mark. This Court was asked to answer a specific question of law which is presented in the Certification Order. Our authority under the Uniform Certification of Questions of Law Act is circumscribed. We are authorized to answer the question posed by the certifying court, or the question as this Court reformulates it. Although the statute expressly permits us to reformulate the certified question,[4] the reformulated question must still be one of Maryland law, and it must properly dispose of the question certified to us. *Piselli v. 75th Street Medical,* 371 Md. 188, 808 A.2d 508 (2002). The Certification of Questions of Law Act does not authorize us to resolve disputed factual issues or questions of federal law. *Piselli,* 371 Md. at 200–203, 808 A.2d at 515–516, and cases there cited. The United States District Court found that there was a genuine issue of material fact as to the existence of an oral contract in the case at bar and that, therefore, summary judgment on this ground would not be appropriate under Rule 56 of the Federal Rules of Civil Procedure. This is not a matter for this Court to explore in a certified question case.

### III.

■ In directing the District Court to certify the question of Maryland law to this Court, the United States Court of

---

4. Under § 12–604 of the Courts and Judicial Proceedings Article, "[t]he Court of Appeals of this State may reformulate a question of law certified to it."

Appeals for the Fourth Circuit was concerned with whether present Maryland common law recognized the availability of specific performance as a remedy to enforce an oral contract to issue an insurance policy. The federal Court of Appeals raised the issue of whether the remedies under the "Unfair and Deceptive Trade Practices" subtitle of the Insurance Code, and particularly the Insurance "Commissioner['s] authority to enjoin and restrain such practices" under §§ 27–103 through 27–105 of the Insurance Code, "may have modified or supplanted Maryland's common law of contracts" regarding the enforceability of oral contracts to provide insurance.[5] *Mardirossian v. Paul Revere Life Ins. Co., supra*, 286 F.3d at 736.

■ At oral argument before this Court, counsel for Paul Revere conceded that, if an oral contract for the insurer to provide the insurance policy existed, such contract was enforceable by specific performance under current Maryland common law. We fully agree with this concession.

More than 100 years ago, in *Phoenix Ins. Co. v. Ryland*, 69 Md. 437, 446, 16 A. 109, 111 (1888), this Court affirmed a decree ordering specific performance of an oral contract to issue an insurance policy, stating:

"It is well established law that upon clear proof that a contract has been made to do something, the consummation of which involves the execution of a written instrument, which is afterwards refused to be made, a court of equity will coerce the execution of the written contract which the parol evidence has shown was agreed upon.

\* \* \*

"It is clearly stated in 1 *Wood on Fire Insurance*, page 29, that contracts to insure will be enforced in equity, and numerous decisions are cited in support of this statement of the law. A contract of insurance is an executed contract which can be enforced at law. A contract to insure is

---

**5.** The "Unfair and Deceptive Trade Practices" subtitle of the Insurance Code was first enacted by Ch. 757 of the Acts of 1947.

executory and requires the interposition of equity to give effect to the agreement of parties. 1 *Wood on Fire Insurance*, 29, 30, 31."

No subsequent opinion of this Court has cast any doubt upon the holding in *Phoenix Ins. Co. v. Ryland, supra.* In fact, Maryland courts have consistently taken the position that oral contracts to provide insurance policies are enforceable. *See, e.g., Jones v. Hyatt,* 356 Md. 639, 646–651, 741 A.2d 1099, 1103–1105 (1999); *Flester v. Ohio Casualty Ins. Co.,* 269 Md. 544, 551, 307 A.2d 663, 667 (1973); *National Fire Ins. v. Tongue, Brooks & Co.,* 61 Md.App. 217, 486 A.2d 212 (1985).

Moreover, the "Unfair and Deceptive Trade Practices" subtitle of the Insurance Code, in § 27–103(e), specifically provides that "[a] cease and desist order issued under this section or an order of court that enforces it does not relieve any person affected by the order from any other liability ... under law." Obviously, the General Assembly did not intend that the Insurance Commissioner's authority, to restrain unfair practices, modified Maryland common law contract enforceability principles.

■ While not specifically asked in the certified question, we also agree with the appellant, Mardirossian, that the administrative remedy under §§ 27–103 through 27–105 is neither exclusive nor primary. The Maryland common law contract remedy is fully concurrent, and may be pursued in court without exhausting the administrative remedy under §§ 27–103 through 27–105. *Zappone v. Liberty Life Ins. Co., supra,* 349 Md. 45, 706 A.2d 1060.

*THE CERTIFIED QUESTION IS ANSWERED AS SET FORTH ABOVE. PURSUANT TO THE CERTIFICATION ORDER AND § 12-610 OF THE COURTS AND JUDICIAL PROCEEDINGS ARTICLE, THE COSTS SHALL BE EQUALLY DIVIDED BETWEEN THE APPELLANT AND THE APPELLEE.*