No. 2--03--0174

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE VILLAGE OF SOUTH ELGIN, ) Appeal from the Circuit

) Court of Kane County.

Plaintiff-Appellant, 
 )

)

v. ) No. 02--CH--853

)

WASTE MANAGEMENT OF ILLINOIS, INC., )

)

Defendant-Appellee
 )

)

(Oak Brook Bank, as Trustee, pursuant to a )

trust agreement dated April 15, 1983, known as )

No. 8-1735; Tri County Landfill Company, Inc.; ) Honorable

Arc Disposal Company, Inc.; and County of Kane,
 ) 
Michael J. Colwell
,

Defendants). ) 
Judge, Presiding.

JUSTICE GROMETER delivered the opinion of the court:

Plaintiff, the Village of South Elgin, appeals an order of the circuit court of Kane County granting motions to dismiss brought by defendant, Waste Management of Illinois, Inc., pursuant to sections 2--615 and 2--619 of the Civil Practice Law (735 ILCS 5/2--615, 2--619 (West 2002)).  The trial court dismissed plaintiff's complaint with prejudice.  Although plaintiff named a number of additional parties as defendants, this appeal involves only Waste Management of Illinois, Inc.  We agree with the trial court's decision to grant defendant's motions to dismiss.  However, we hold that plaintiff should have been allowed to amend a portion of its complaint.  Accordingly, we affirm the order of the circuit court dismissing plaintiff's complaint, but we reverse that portion of the order dismissing the complaint with prejudice and remand for further proceedings.

I. BACKGROUND

The following facts are taken from plaintiff's complaint as well as various documents submitted by the parties.  In ruling on a section 2--615 motion to dismiss, we must accept all well-pleaded facts as true.  
Krueger v. Lewis
, 342 Ill. App. 3d 467, 470 (2003)
.  Similarly, a motion to dismiss pursuant to section 2--619 admits all well-pleaded facts and the reasonable inferences capable of being drawn therefrom.  
People ex rel. Department of Public Aid v. Smith
, 343 Ill. App. 3d 208, 213 (2003).  The record must be construed in the light most favorable to the nonmovant.  
Nolan v. Hillard
, 309 Ill. App. 3d 129, 138 (1999).  However, conclusions of law and conclusory factual allegations not supported by allegations of specific facts are not deemed admitted.  
Lawson v. City of Chicago
, 278 Ill. App. 3d 628, 634 (1996).  Moreover, it is well established that courts are to construe pleadings liberally with a view toward doing substantial justice between the parties.  
Cole v. Guy
, 183 Ill. App. 3d 768, 773 (1989).

In 1976, a facility known as the Woodland Landfill opened on plaintiff's eastern border, in what was formerly a gravel quarry.  Defendant is the operator of the facility.  The landfill is located on a 213-acre site that is owned by defendant.  In 1982, it was determined that the facility could sustain operations for only 36 more months.  Defendant sought and received a permit from Kane County that allowed the site to continue to operate.  In 1988, defendant sought another permit that would allow the landfill to operate for an additional 15 years.

Plaintiff was initially opposed to the proposal to extend the life of the landfill for 15 years.  Defendant's representatives met with plaintiff's mayor and village engineer to address plaintiff's objections to the extension.  These discussions are referenced in the minutes from meetings of plaintiff's village board.  Plaintiff alleges that these discussions resulted in an agreement whereby defendant agreed to certain conditions and plaintiff agreed not to oppose the project in hearings before the Kane County Board.  Plaintiff further alleges that a letter from defendant to plaintiff's mayor that is dated July 8, 1988, memorialized the agreement.  The letter begins, "Waste Management of Illinois, Inc., will agree to the following conditions with the Village of South Elgin, Illinois, and the County of Kane upon successful siting of our application which is before the Kane County Board *** and the issuance of an operating permit by the Illinois Environmental Protection Agency for this landfill expansion."  The first condition set forth in the letter involves the financial responsibilities of plaintiff and defendant should any wells become contaminated.  Defendant was to be responsible if the landfill caused the contaminations.  If, however, it was shown that the contamination was caused by some other source, plaintiff was to reimburse defendant for any expenses defendant incurred.  The letter also states that "Waste Management of Illinois, Inc., agrees and stipulates that this expansion will be the last expansion that we will attempt to do on this site which is commonly known as the Woodland Landfill site."  Finally, it delineated defendant's obligations to monitor groundwater for contamination and to allow plaintiff to inspect the landfill.

Additionally, the application submitted by defendant for the 1988 extension contained certain representations.  Among them, defendant set forth the number of trucks that would use the facility each day and their hours of operation.  The application also contained an end-use plan that envisioned the area being used as a recreational area for activities such as bicycle riding, hiking, and sledding.

Plaintiff alleges that, pursuant to the terms of its agreement with defendant, it did not file with the Kane County Board any formal objection to the 15-year extension.  During a public hearing on July 26, 1988, the letter of July 8 was read into the record.  On September 13, 1998, the Kane County Board enacted a resolution granting approval for the 15-year extension.  The Board imposed several conditions upon the grant.  First, the resolution states that "the site will be developed and operated in a manner consistent with the representations made at the public hearing in this matter held on July 26, 1988."  It also incorporated plaintiff's and defendant's financial responsibilities regarding potential contamination and defendant's obligations to monitor groundwater.  Further, the resolution expressly incorporated defendant's letter of July 8.  Another condition set forth in the resolution was that "[t]he site, commonly known as the Woodland site, shall not be expanded further."

On June 14, 2002, defendant filed an application with Kane County to operate a transfer station on the Woodland site.  A transfer station is a "site or facility that accepts waste for temporary storage or consolidation and further transfer to a waste disposal, treatment or storage facility" (415 ILCS 5/3.500 (West 2002)).  The proposed installation would occupy about 9 acres of the 120-acre area that the landfill occupies.  It would service 406 trucks per day, which is well over twice the number using the landfill.

Plaintiff instituted the present action in response to defendant's attempt to secure approval for the transfer station.  The sole count of its complaint is titled "Breach of Contract and Request for Specific Performance."  Plaintiff conflates two distinct theories in this count.  The first paragraph of the count alleges that the "conditions 
imposed by
 Kane County" constitute covenants that run with the land, while the third paragraph alleges that defendant's conduct amounts to "breaches of the covenants 
agreed to
" by defendant.  (Emphasis added.)  These are discrete theories.  The first allegation suggests a violation of the 1988 Kane County resolution authorizing the 15-year extension.  The second intimates a breach of an agreement between plaintiff and defendant.  Construing the complaint liberally, as we must (see 
Cole
, 183 Ill. App. 3d at 773), we will address both theories.  Our doing so does not prejudice defendant, for a review of defendant's brief filed in this court, as well as its motions to dismiss filed below, indicates that defendant is, and has long been, aware of both theories.  
Cf.
 
Ruklick v. Julius
 
Schmid, Inc.
, 169 Ill. App. 3d 1098, 1113 (1988) ("Here, the proposed amendment would apparently cure the pleading defect; it would certainly not prejudice or surprise defendants, who have been aware at least since the voluntarily dismissed complaint of the gravamen of plaintiffs' cause of action"); 
Pinelli v. Alpine Development Corp.
, 70 Ill. App. 3d 980, 1003 (1979) (finding no prejudice where, "[a]lthough the relief granted was not precisely what was requested, defendants cannot argue that they did not know plaintiffs were seeking a return of their property"); 
County of DuPage v. Kussel
, 12 Ill. App. 3d 272, 278 (1973) ("If the trial clearly proceeded on a negligence theory and if the counterdefendant would not be prejudiced by applying 
res ipsa loquitur
, this court could on its own motion amend the pleadings to comply with the proofs").

Indeed, defendant filed two separate motions to dismiss.  The motion filed pursuant to section 2--619 of the Civil Practice Law (735 ILCS 5/2--619 (West 2002)) was based on, 
inter alia
, plaintiff's "failure to exhaust its administrative remedies."  This allegation is clearly responsive to plaintiff's claim that defendant violated the conditions imposed by Kane County in its resolution.  Defendant's section 2--615 motion (735 ILCS 5/2--615 (West 2002)) asserted, in part, that plaintiff's complaint did not contain allegations showing an offer or valid consideration.  This motion focused upon plaintiff's contract theory.  The trial court accepted both of defendant's arguments; consequently, it granted both of defendant's motions.  We largely agree with the trial court.  However, as we will explain below, plaintiff must be given an opportunity to replead its contract theory.

II. ANALYSIS

This appeal presents two main issues.  First, we must consider whether the doctrine of exhaustion of remedies bars plaintiff from proceeding.  If not, we must then consider whether plaintiff has adequately pleaded a cause of action.  We review 
de novo
 the decision of a trial court to dismiss a complaint under both sections 2--615 and 2--619 of the Civil Practice Law (735 ILCS 5/2--615, 2--619 (West 2002)).  
Canel v. Topinka
, 342 Ill. App. 3d 65, 69 (2003). 

A. Exhaustion of Administrative Remedies

Before turning to the substance of this issue, we must address defendant's contention that plaintiff has waived, for the purpose of this appeal, its ability to argue that it was not required to exhaust remedies.  As defendant points out, points not argued before the trial court generally may not be raised for the first time on appeal.  See 
Hansen v. Baxter Healthcare Corp.
, 198 Ill. 2d 420, 429 (2002).  However, contrary to defendant's contention, plaintiff did, albeit briefly, address the issue.  Plaintiff argued that exhaustion did not apply to its theory concerning a contractual obligation and then went on to explain why it believed a contract existed.  While more extensive briefing likely would have been helpful to the trial court, plaintiff sufficiently contested defendant's assertion that exhaustion was required to put the trial court on notice of the issue, and the court did consider it, as it was one of the primary arguments asserted in defendant's section 2--619 motion.  See
 Poplar Grove State Bank v. Powers
, 218 Ill. App. 3d 509, 515 (1991) ("We note that plaintiff did not raise the waiver issue below and did not argue waiver in its motion for rehearing. Nonetheless, because the trial judge considered the issue after raising it 
sua sponte
, we will also address the argument despite plaintiff's failure to pursue the matter more vigorously").

Moreover, the waiver rule is not jurisdictional; it is a prerogative of this court. 
 
Dillon v. Evanston Hospital
, 199 Ill. 2d 483, 504-05 (2002).  In 
Daniels v. Anderson
, 252 Ill. App. 3d 289, 299 (1993), the court noted that "[o]ne of the purposes of the waiver rule--to allow the adversative process an opportunity to fully develop an issue below--would be particularly frustrated here because Daniels has been denied a full opportunity to contest application of the doctrine." 
 Exhaustion is an affirmative defense (see 
Hawthorne v. Village of Olympia Fields
, 204 Ill. 2d 243, 254 (2003); 
Milton v. Illinois Bell Telephone Co.
, 101 Ill. App. 3d 75, 82 (1981)
), and, of course, the party asserting a defense bears the burden of establishing it (
Glisson v. City of Marion
, 188 Ill. 2d 211, 224 (1999)).  Having raised the issue, defendant was surely aware of it and should have been aware of its obligation to establish the premises of its argument.  Defendant does not explain what it would have done differently in the action below had plaintiff argued the issue more vigorously.  Accordingly, we would decline to apply the waiver rule under these circumstances even if we were to deem inadequate plaintiff's response to the argument in the trial court.

Turning to the merits of the exhaustion issue, we conclude that, to the extent that plaintiff's complaint is based upon defendant's alleged violation of the Kane County resolution, it is subject to the requirement that plaintiff exhaust administrative remedies.  However, plaintiff's contract theory is not.  The doctrine of exhaustion of remedies helps establish a proper relationship between the court system and administrative bodies.  
People's Energy Corp. v. Illinois Commerce Comm'n
, 142 Ill. App. 3d 917, 931 (1986).  Generally, a party aggrieved by an administrative action must first pursue all available administrative remedies before resorting to the courts.  
Rockford Memorial Hospital v. Department of Human Rights
, 272 Ill. App. 3d 751, 757 (1995).  The purpose of the doctrine is to allow administrative bodies to develop a factual record and to permit them to apply the special expertise that they possess.  
Illinois Bell Telephone Co. v. Allphin
, 60 Ill. 2d 350, 359 (1975).  Exhaustion also minimizes interruption of the administrative process.  
Dilley v. Americana Healthcare Corp.
, 129 Ill. App. 3d 537, 543 (1984).  Moreover, the aggrieved party might succeed before the administrative body, obviating the need for judicial involvement, thereby conserving judicial resources.  
Allphin
, 60 Ill. 2d at 358.

The doctrine applies only when an agency has exclusive jurisdiction over an action.  
Emery Worldwide Freight Corp. v. Snell
, 288 Ill. App. 3d 808, 810 (1997).  If the courts and an agency enjoy concurrent jurisdiction over a matter, the doctrine of primary jurisdiction applies instead.  
People v. NL Industries
, 152 Ill. 2d 82, 95 (1992).  Circuit courts are courts of general jurisdiction and, outside of a few exceptions, have jurisdiction over all justiciable matters.  Ill. Const. 1970, art. VI, §9; 
Ligon v. Williams
, 264 Ill. App. 3d 701, 707 (1994).  The legislature may, however, define the jurisdiction of circuit courts in the limited field of administrative review.  Ill. Const. 1970, art. VI, §9; 
Belleville Toyota, Inc. v. Toyota Motor Sales , U.S.A., Inc.
, 199 Ill. 2d 325, 337 (2002).  If the legislature does intend to divest the circuit courts of jurisdiction over some matter, it must do so explicitly.  
Orr v. Edgar
, 283 Ill. App. 3d 1088, 1098 (1996).  Thus, we must examine relevant legislative enactments and determine who has jurisdiction to hear the action that plaintiff has instituted.

Relevant to this inquiry is section 39.2(g) of the Environmental Protection Act (Act) (415 ILCS 5/39.2(g) (West 2002)).  This section provides as follows:

"The siting approval procedures, criteria and appeal procedures provided for in this Act for new pollution control facilities shall be the exclusive siting procedures and rules and appeal procedures for facilities subject to such procedures.  Local zoning or other local land use requirements shall not be applicable to such siting decisions."  415 ILCS 5/39.2(g) (West 2002).

Section 39.2(a) vests county boards and other local governmental bodies with the authority to grant requests for local siting approval.  415 ILCS 5/39.2(a) (West 2002).  The plain language of the statute is, of course, the best indication of the legislature's intent.  
Lee v. John Deere Insurance Co.
, 208 Ill. 2d 38, 43 (2003).  Here, interpreting these provisions requires no great feat of statutory construction, for the language at issue is unmistakably clear.  Read together, sections 39.2(a) and 39.2(g) make plain the legislature's intent that county boards and like entities shall be the exclusive forum for passing on questions regarding the application of the Act to the siting of pollution control facilities.  The legislature has exercised its ability to remove such matters from the jurisdiction of the circuit courts, and the doctrine of exhaustion of remedies is applicable (
Emery Worldwide Freight Corp.
, 288 Ill. App. 3d at 810).

The Kane County Board's resolution approving the 15-year extension was passed pursuant to the authority granted county boards in section 39.2(a) of the Act.  See Ill. Rev. Stat. 1987, ch. 111 1/2, par. 1039.2.  As such, the resolution was one of the siting procedures provided for in the Act.  It therefore clearly falls within section 39.2(g)'s grant of exclusive jurisdiction to local governmental entities.  Accordingly, before plaintiff may resort to the court system regarding defendant's alleged noncompliance with the resolution, plaintiff must exhaust its potential administrative remedies.  See 
Dixon v. City of Monticello
, 223 Ill. App. 3d 549, 556-57 (1991) ("There is nothing in the record indicating the zoning board of appeals would not adequately protect the interests of private citizens in the event objections are filed with regard to an application for rezoning, a variation, or a conditional use permit.  Objectors ought first to exhaust their administrative remedies").

Plaintiff's claim that an agreement existed between it and defendant presents a different question.  This claim does not involve a right arising under the Act or from an action of the Kane County Board.  Instead, it stems from an alleged contract.  Accordingly, the pertinent question is whether plaintiff had to exhaust its contract claim before proceeding in the circuit court.

An action on a contract is, of course, a traditional common-law cause of action.  See, 
e.g.
, 
Safeway Insurance Co. v. Daddono
, 334 Ill. App. 3d 215, 223 (2002); 
People ex rel. Powles v. Alexander County
, 310 Ill. App. 602, 605 (1941).  Hence, plaintiff's claim that defendant breached the terms of a contract does not arise under any provision of the Act (415 ILCS 5/1 
et seq
. (West 2002)).  To ascertain whether plaintiff was required to exhaust this claim before the Kane County Board prior to bringing it in a court, we must consider whether the legislature intended to deprive the circuit court of jurisdiction over such claims in section 39.2(g) of the Act (415 ILCS 5/39.2(g) (West 2002)).  Parenthetically, we expressly do not decide whether the legislature has the power to remove a traditional common-law action from the jurisdiction of the courts, as the question of whether the legislature intended to do so is dispositive in the instant case.

As noted above, section 39.2(g) states that "[t]he siting approval procedures, criteria and appeal procedures provided for in this Act *** shall be the exclusive siting procedures and rules and appeal procedures for facilities subject to such procedures."  415 ILCS 5/39.2(g) (West 2002).  Again, we are confronted with a question of statutory interpretation and turn to the plain language of the statute (
Lee
, 208 Ill. 2d at 43).

By its plain language, section 39.2(g) concerns itself with the siting approval procedures and criteria set forth in the Act.  A contract, existing independently of the Act, is not part of the process of approving a siting decision.  Although they may affect defendant's ability to utilize the Woodland site for a transfer station, defendant's obligations under the alleged contract with plaintiff are collateral to the issue before the Kane County Board regarding whether it would be appropriate to permit a transfer facility at the Woodland site in accordance with the requirements of the Act (415 ILCS 5/39.2(g) (West 2002)).  Because section 39.2(g)'s plain language indicates that the legislature intended to vest the county board with jurisdiction to hear only matters specified in the Act, we conclude that it did not intend that matters such as actions based on contracts, even if they actually could affect siting, be heard exclusively before the county board.

Analogous situations arise in another area where the exhaustion doctrine is frequently invoked.  Often, collective-bargaining agreements contain grievance procedures, and an employee is required to exhaust these procedures before commencing an action in court.  See 
Cessna v. City of Danville
, 296 Ill. App. 3d 156, 165 (1998) ("It is well settled that an employee subject to a collective-bargaining agreement must at least attempt to exhaust contractual remedies before resorting to a judicial remedy"); 
Perkins v. Pepsi-Cola General Bottlers, Inc.
, 158 Ill. App. 3d 893, 899 (1987).  In 
Burgess v. Chicago Sun-Times
, 132 Ill. App. 3d 181 (1985), the court considered whether an employee had to exhaust any remedies he had under a collective-bargaining agreement before instituting a retaliatory-discharge action.  The 
Burgess
 court ruled that exhaustion was not required, reasoning that "a cause of action for retaliatory discharge is now recognized in Illinois 'independent of any contract remedy the employee may have based on [a] collective-bargaining agreement.' " 
Burgess
, 132 Ill. App. 3d at 184, quoting 
Midgett v. Sackett-Chicago, Inc.
, 105 Ill. 2d 143, 149 (1984).  Just as the plaintiff in 
Burgess
 was not required to exhaust remedies because his cause of action was based on something outside the collective-bargaining agreement, plaintiff bases its claim to relief on a contract independent of anything set forth in the Act.  
Cf.
 
Nickels v. Burnett
, 343 Ill. App. 3d 654, 659 (2003) ("
Given the procedural posture of the case, namely, that plaintiffs had filed an action alleging public and private nuisance based on both statutory authority and common law, there was no obligation upon plaintiffs, in the strict confines of this action, to have sought review of the Department's orders granting defendants permission to build the hog facility"); 
Ginn v. Consolidation Coal Co.
, 107 Ill. App. 3d 564, 568 (1982) ("In the case at bar, plaintiff does not ask for judicial review of any administrative action nor are we persuaded that he was required to seek relief through an administrative agency before seeking relief under the common law").

Case law from other jurisdictions supports our conclusion that plaintiff need not exhaust administrative remedies before instituting an action on its alleged contract with defendant.  In 
Town of Surfside v. County Line Land Co.
, 340 So. 2d 1287 (Fla. 1977), a real estate developer sued to enjoin the Town of Surfside from operating a dump that, the developer alleged, constituted a nuisance.  The trial court granted the injunction, ordering, in part, that the town comply with certain environmental regulations.  
Town of Surfside
, 340 So. 2d at 1288.  Surfside argued that the developer failed to exhaust administrative remedies, as required by a Florida statute.  
Town of Surfside
, 340 So. 2d at 1289.  On appeal, the court rejected this argument, observing that "[t]he fallacy in this argument is that [the developer] is not suing to enjoin the violation of [an environmental regulation] of the Department of Pollution Control, but rather instituted this action based upon its common law right to abate a nuisance."  
Town of Surfside
, 340 So. 2d at 1289.  Similarly, in the present case, plaintiff's contract theory is not based on an alleged violation by defendant of the Kane County resolution authorizing the 15-year extension.  Rather, it is based on an alleged independent agreement between the parties.  We find it of no moment that 
Surfside
 involved a nuisance action while the instant case involves a contract claim; both are independent common-law actions.  See also 
Rocha v. Missouri Pacific R.R. Co.
, 224 F. Supp. 566, 568 (S.D. Tex. 1963) ("Although the decision of the Board is final and binding, the employee may elect not to pursue his administrative remedy for reinstatement, but may bring a common-law action for damages resulting from the wrongful discharge"), 
Cork v. Applebee's of Michigan, Inc.
, 239 Mich. App. 311, 316, 608 N.W.2d 62, 64 (2000).`

A federal case, applying Maryland law, presented a situation significantly similar to that in the case before us.  Under Maryland law, like the law of this state, an agency has exclusive jurisdiction where the legislature so specifies.  
Zappone v. Liberty Life Insurance Co.
, 349 Md. 45, 62, 706 A.2d 1060, 1068 (1998).  In 
Mardirossian v. Paul Revere Life Insurance Co.
, 286 F.3d 733 (4th Cir. 2002), the plaintiff alleged an oral contract under which the defendant was to provide insurance to the plaintiff.  The district court dismissed the cause because the plaintiff had failed to exhaust remedies before the Maryland Department of Insurance.  
Mardirossian
, 286 F.3d at 734-35.  The court of appeals was uncertain as to whether a common-law cause of action existed for the wrong alleged by the plaintiff.  Accordingly, it vacated and remanded, directing the district court to certify to the Maryland Court of Appeals a question as to whether a cause of action existed outside of the state's insurance code.  
Mardirossian
, 286 F.3d at 736.  If so, the district court would have concurrent jurisdiction.  
Mardirossian
, 286 F.3d at 736.  Thus, 
Mardirossian
 teaches that, where a common-law scheme exists independent of a statutory scheme administered by an agency and the legislature has not otherwise limited the courts' jurisdiciton, the court system has jurisdiction over the subject matter of the dispute.  See 
Zappone
, 349 Md. at 61, 706 A.2d at 1068; see also 
Rojo v. Kliger
, 52 Cal. 3d 65, 88, 801 P.2d 373, 387, 276 Cal. Rptr. 130, 144 (1990) (holding that "although an employee must exhaust the FEHA administrative remedy before bringing suit on a cause of action under the act or seeking the relief provided therein, exhaustion is not required before filing a civil action for damages alleging nonstatutory causes of action").  Under such circumstances, the exhaustion doctrine does not apply.  
Emery Worldwide Freight Corp.
, 288 Ill. App. 3d at 810.

We therefore conclude that, although plaintiff cannot advance a claim based on defendant's purported failure to comply with the terms of the Kane County resolution without first exhausting its administrative remedies, exhaustion is no bar to its contract claim.  However, the trial court dismissed plaintiff's complaint pursuant to both section 2--615 and section 2--619 of the Civil Practice Law (735 ILCS 5/2--615, 2--619 (West 2002)).  Thus far, we have only determined that the exhaustion doctrine, which was the basis of the section 2--619 motion, does not bar plaintiff's contract claim.  We must yet inquire as to whether this claim was properly dismissed pursuant to section 2--615.

B. Sufficiency of the Complaint

Plaintiff contests the trial court's decision to dismiss its complaint pursuant to section 2--615 of the Civil Practice Law (735 ILCS 5/2--615 (West 2002)).  A motion to dismiss brought under this section admits all well-pleaded facts, but not conclusions of law or factual conclusions not supported by allegations of specific fact.  
Raintree Homes, Inc. v. Village of Long Grove
, 335 Ill. App. 3d 317, 319 (2002).  Illinois is a fact-pleading jurisdiction.  
Chandler v. Illinois Central R.R. Co.
, 207 Ill. 2d 331, 348 (2003).  Hence, a plaintiff must plead facts that bring the case within the asserted cause of action.  
Chandler
, 207 Ill. 2d at 348.  The purpose of a section 2--615 motion is to point out defects in pleadings and allow the plaintiff an opportunity to amend and present a valid complaint.  
Roy v. Coyne
, 259 Ill. App. 3d 269, 274 (1994).  Therefore, though the granting of a motion to amend lies within the sound discretion of the trial court, the usual course is to grant a plaintiff liberal leave to amend.  Unless it clearly appears that no set of facts exist that would entitle the plaintiff to relief, the dismissal should not be with prejudice.  
Hensler v. Busey Bank
, 231 Ill. App. 3d 920, 924 (1992).

In this case, plaintiff alleges a breach of contract.  The elements for this action are (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages.  
Barille v. Sears Roebuck and Co.
, 289 Ill. App. 3d 171, 175 (1997).  Defendant contends that plaintiff's pleading is insufficient as to the existence of an offer, consideration, and breach.

Regarding consideration and breach, we disagree with defendant.  Plaintiff alleged that, as a result of its agreement with defendant, it "did not file any formal objection" to the 15-year extension.  It also relies on certain obligations it claims it incurred to reimburse defendant for certain potential costs of cleaning contaminated wells.  As we find that plaintiff's alleged forbearance of an opportunity to object to the 15-year extension was adequate consideration, we will not address plaintiff's argument regarding reimbursement.

Consideration means a bargained-for exchange of promises or performances.  
Bishop v. We Care Hair Development Corp.
, 316 Ill. App. 3d 1182, 1198 (2000).  It may consist of a promise, an act, or a forbearance.  
Bishop
, 316 Ill. App. 3d at 1198.  An act or promise that is a benefit to one party or a detriment to the other party is consideration sufficient to support a contract.`
Hurd v. Wildman, Harrold, Allen and Dixon
, 303 Ill. App. 3d 84, 93 (1999).  "Detriment" and "benefit" are terms of art and carry a special meanings:

" 'Neither the benefit to the promisor nor the detriment to the promisee need be actual. "It would be a detriment to the promisee, in a legal sense, if he, at the request of the promisor and upon the strength of that promise, had performed any act which occasioned him the slightest trouble or inconvenience, and which he was not obliged to perform."  Thus abstaining from smoking and drinking, though in fact in the particular case a benefit to the promisee's health, finances, and morals and of no benefit to the promisor, is a legal detriment and if requested as such is sufficient consideration for a promise.' "  
Hamilton Bancshares, Inc. v. Leroy
, 131 Ill. App. 3d 907, 913 (1985), quoting 1 W. Jaeger, Williston on Contracts §102A, at 380-81 (3d ed. 1957).

Thus, plaintiff's alleged promise to refrain from opposing the 15-year extension was a promise to forbear from doing something that plaintiff would have otherwise been entitled to do.  Consequently, plaintiff's promise is adequate consideration to support a contract.

Defendant contends that plaintiff had no property interest in participating in the hearing on the 15-year extension or any authority to unilaterally veto the plan.  These observations are irrelevant.  Plaintiff was under no obligation to refrain from formally opposing the plan prior to entering into the alleged contract.  Section 39.2(c) of the Act permits any person to file a comment concerning proposed actions.  415 ILCS 5/39.2(c) (West 2002).  Plaintiff allegedly promised to give up its ability to do so.  This promise, if proved, constitutes adequate consideration.

Defendant next argues that placing a transfer facility on the Woodland site would not be a breach of defendant's alleged promise that the 15-year expansion would be the last.  Defendant contends that placing a transfer facility at the Woodland site would not constitute an expansion at all.  Defendant relies on section 3.330(b)(2) of the Act, which states: "A new pollution control facility is *** the area of expansion beyond the boundary of a currently permitted pollution control facility."  415 ILCS 5/3.330(b)(2) (West 2002).  Defendant reasons that locating a new transfer facility on the Woodland site would not be an expansion because it would not increase the size of the landfill.  Assuming section 3.330(b)(2) supports defendant's position (we note it defines "new pollution control facility" rather than "expansion"), we find defendant's argument ill taken.

The principal objective in construing a contract is to ascertain and give effect to the intent of the parties.  
Illinois Valley Asphalt, Inc. v. La Salle National Bank
, 54 Ill. App. 3d 317, 320 (1977).  "Intent" refers to objective manifestations of intent in the words of the contract and the actions of the parties; it does not encompass one party's secret, undisclosed intentions or purely subjective understandings of which the other party is unaware.  See 
American College of Surgeons v. Lumbermens Mutual Casualty Co.
, 142 Ill. App. 3d 680, 699-700 (1986).  
Terms are to be given their ordinary meaning unless it appears that the parties intended them to carry some other meaning.  
Illinois Valley Asphalt, Inc.
, 54 Ill. App. 3d at 320.  Put another way, "Unless the contract clearly defines its terms, the court must give the contractual language its common and generally accepted meaning."  
Krilich v. American National Bank & Trust Co. of Chicago
, 334 Ill. App. 3d 563, 574-75 (2002).  The party asserting that a term has some meaning other than its ordinary one bears the burden of establishing the nonstandard usage of the term.  See 
Prairie Land Construction, Inc. v. Village of Modesto
, 213 Ill. App. 3d 364, 370 (1991); 
cf
. 
Katz v. Brooks
, 65 Ill. App. 2d 155, 160 (1965) (holding that the party asserting that a contract must be read in light of a trade practice bears the burden of proving that the practice exists).

We note that the ordinary meaning of the term "expansion" includes "the act or process of increasing in extent, size, number, volume, or scope."  
Webster's Third New International Dictionary 610 (2002).  Thus, 
plaintiff's allegation that the transfer facility would service over twice the number of trucks currently using the landfill falls within the common meaning of "expansion," as an increase in extent, scope, and number.  The meaning defendant attempts to ascribe to the term essentially limits it to changes in geographical size.  For defendant to succeed, it is incumbent on it to show that the parties contracted with section 3.330(b)(2) of the Act in mind (415 ILCS 5/3.330(b)(2) (West 2002)).  Thus far, defendant has made no such showing and this argument must fail.  However, nothing in this opinion precludes defendant from attempting to make the necessary showing as this cause progresses.

Finally, defendant contends that plaintiff has not adequately pleaded that defendant made an offer.  We agree.  Plaintiff asserts that the letter from defendant to plaintiff's mayor contains the necessary elements of contract formation.  In its complaint, plaintiff made the following allegations:

"13.  The discussion between Waste Management and South Elgin subsequently resulted in an [a]greement in which South Elgin agreed not to file any formal objection to the proposed expansion with Kane County in exchange for which Waste Management agreed to make certain changes to its proposed plans, agreed to certain conditions on the use of the [p]roperty -- both as a landfill and at the time of closure.  South Elgin Approved this [a]greement at its July 5, 1988 meeting.

14.  Waste Management specifically documented this [a]greement in a letter dated July 8 from Waste Management to South Elgin, a true and correct copy of which is attached hereto as Exhibit I."

Part of the problem with plaintiff's attempt to use the letter to demonstrate the elements of a contract is that it is apparent that the letter merely memorializes past events that, according to the complaint, were accepted by plaintiff during its July 5 meeting.  In fact, during oral argument, plaintiff's counsel acknowledged that the letter was the culmination of the terms agreed to during a period of negotiation leading up to July 5.  If a contract was formed during these negotiations, plaintiff needs to plead this fact with some specificity.  More importantly, the letter does not appear to contain all of the elements necessary to show the formation of a contract.  For example, it states that defendant "will agree" to certain conditions.  However, it says nothing about plaintiff's alleged obligation to refrain from objecting to the plan.  If, as plaintiff suggested at oral argument, the letter constitutes a unilateral contract that plaintiff could accept by performing, that is, not objecting, this needs to be pleaded. 

Defendant points out that the letter begins by stating that defendant "will agree," rather than "agrees" to certain conditions.  However, the letter also states that defendant "agrees and stipulates" that the 15-year expansion will be the last.  While this statement seems more like an acceptance than an offer, it only creates a question of fact as to the intent of the parties.  Section 26 of the Restatement (Second) of Contracts provides:

"A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent."  Restatement (Second) of Contracts §26 (1981).

Defendant's statement that it "will agree" arguably gave plaintiff reason to know that a further manifestation of assent was necessary before a contract would be formed. 

Similarly, the letter is not very specific regarding some points that are at issue in this litigation.  Section 33 of the Restatement (Second) of Contracts states, in part, "Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain."  Restatement (Second) of Contracts §33 (1981).  For example, plaintiff spends some time arguing that the agreement did not merge into the Kane County resolution approving the 15-year extension.  This may or may not be true; it turns on the intent of the parties.  The alleged agreement between plaintiff and defendant could have been for three things.  It could have been an independent covenant between the parties placing certain conditions upon the use of the Woodland site, an agreement that defendant would insure that certain conditions were incorporated into the resolution, or both.  We cannot determine which simply from reading the letter.  Parenthetically, we note that the letter was made an exhibit to the resolution, which suggests that the first possibility does not represent the alleged agreement; however, it does not rule out the last two.

In sum, plaintiff's complaint should not have been dismissed with prejudice.  As noted above, the complaint suggests that the letter was merely a memorialization of an agreement rather than the agreement itself, and, as plaintiff stated at oral argument, some of the steps of contract formation may have occurred during negotiations prior to July 5.  The complaint does specifically reference an agreement resulting from discussions between the parties, but only in a vague manner.  It also suggests that plaintiff performed its obligations ("In accordance with the terms of the [a]greement, South Elgin did not file any formal objection to the Woodland III expansion with Kane County").  Thus, it does not clearly appear that plaintiff can prove no set of facts that would entitle it to relief, and plaintiff should be given an opportunity to amend its complaint.  See 
Hensler
, 231 Ill. App. 3d at 924.  If plaintiff can adequately plead the elements of contract formation, along with the terms of a sufficiently definite agreement, plaintiff should be allowed to proceed with this cause.

III. CONCLUSION

In light of the foregoing, we affirm the order of the circuit court of Kane County granting defendant's motions to dismiss.  We reverse insofar as defendant's motion pursuant to section 2--615 was granted with prejudice, and we remand to allow plaintiff to amend its complaint in accordance with the views expressed herein.

Affirmed in part and reversed in part; cause remanded with directions

O'MALLEY, P.J., and CALLUM, J., concur.