NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220362-U

NO. 4-22-0362

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 9, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| LEE COUNTY, ILLINOIS, a Public Corporation and Body Politic, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellant, | ) | Lee County |
| v. | ) | No. 21MR98 |
| LEE COUNTY LANDFILL, INC., an Illinois Corporation and REPUBLIC SERVICES, INC., a Delaware Corporation, | ) ) ) | Honorable Clayton L. Lindsey, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Knecht and Justice Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the circuit court properly entered summary judgment because there existed no genuine issue of material fact and defendants were entitled to judgment as a matter of law.

¶ 2    In November 2021, plaintiff, Lee County, filed a complaint for declaratory judgment, seeking the circuit court's declaration plaintiff has the right to consider an application for the siting of a second landfill within its geographic boundaries, and the solid waste management agreement between plaintiff and defendants, Lee County Landfill, Inc., and Republic Services, Inc., did not restrict any such right. Pursuant to section 2-1005(c) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005(c) (West 2020)), defendants moved for summary judgment, contending there was no genuine issue of material fact regarding whether the contractual agreement between the parties prevented plaintiff from enacting a solid waste

management plan intended to establish alternative landfills within Lee County. After substantial briefing and argument, the court granted defendants' summary judgment motion.

¶ 3 Plaintiff appeals, arguing the circuit court erred in granting summary judgment in favor of defendants. Plaintiff contends the court erred by enforcing the contract in a way which misinterpreted its terms and ignored the "statutory primacy" of plaintiff's solid waste management plan over the contract. We affirm.

¶ 4 I. BACKGROUND

¶ 5 The following facts are taken from plaintiff's complaint as well as various documents submitted by the parties. In August 1993, plaintiff adopted a solid waste management plan (Plan) pursuant to section 4(a) of the Solid Waste Planning and Recycling Act (SWPRA) (415 ILCS 15/4(a) (West 1992)), which provided, in part, "each county with a population of less than 100,000, shall submit to the [Environmental Protection] Agency [(Agency)] an officially adopted plan for the management of municipal waste generated within its boundaries." Relevant to this appeal, section 5(e) of SWPRA (415 ILCS 15/5(e) (West 1992)) requires each county waste management plan to be updated and reviewed every five years.

¶ 6 In June 1994, plaintiff entered into a solid waste management agreement (Agreement) with defendants, wherein defendants agreed to operate a landfill located within Lee County in exchange for, *inter alia*, plaintiff's agreement "to amend its *** Plan by designating the Lee County Landfill as its regional waste disposal facility." Thereafter, plaintiff amended the Plan to provide that plaintiff would utilize existing sited landfill capacity within Lee County as its long-term disposal option and recognized its agreement with defendants "to continue operation of the Lee County Landfill into the foreseeable future."

- 2 -

¶ 7        In October 1998, plaintiff adopted its first five-year update to the Plan (five-year update) which provided plaintiff would "rely on the Lee County Landfill for its long-term disposal capacity pursuant to its *** Agreement with [defendants]." The five-year update further recommended there be no new landfills sited or expanded in Lee County for the next five years.

¶ 8        In October 2002, the parties adopted an amendment to the Agreement after finding it necessary to do so before defendants filed their intended siting application for the expansion of the Lee County Landfill. In exchange for defendants' willingness to (1) provide "long-term, environmentally sound landfill disposal capacity for [plaintiff's] residents and commercial, institutional, and industrial establishments" and (2) pay plaintiff a fee for each ton of waste disposed of in the landfill, plaintiff agreed to amend the Plan "to designate the Lee County Landfill as the sole landfill to be permitted in Lee County, so long as [Lee County Landfill, Inc.] is open and operating the Lee County Landfill *** and is in compliance with the Agreement (as amended) and the *** Plan."

¶ 9        In November 2003, plaintiff adopted its 10-year update to the Plan, wherein plaintiff acknowledged its obligations under the October 2002 amendment to the Agreement. The 10-year update also provided "a list of the recommendations approved by the Lee County Board which represent[ed] [plaintiff's] solid waste policy for the next five years," which included the following provision:

> "The Lee County Landfill as it is currently permitted and as it is anticipated to be expanded, shall be designated as the sole landfill to be permitted anywhere within the borders of Lee County. This sole designation is contingent upon the Lee County Landfill and its expansion remaining open and operating, and remaining in compliance with the *** Agreement, as amended."

¶ 10 In November 2008, the parties adopted a second amendment to the Agreement after plaintiff sought assurances and investments in the Lee County Landfill from defendants to ensure Lee County's solid waste disposal needs were met in the future. In exchange for defendants' willingness to provide plaintiff's desired assurances and investments, plaintiff agreed "to reaffirm its agreement, commitment, and determination that the [Lee County] Landfill will be the only landfill to be permitted in Lee County." That same month, plaintiff adopted its 15-year update to the Plan, which reaffirmed the Lee County Landfill's designation as the "sole landfill" to be permitted within Lee County, so long as it remained open and operating and in compliance with the Agreement.

¶ 11 In March 2012, the parties adopted the third, and final, amendment to the Agreement, wherein plaintiff "recognize[d] the historical and future capability of the [Lee County] Landfill and [defendants] to provide for the solid waste disposal needs of [Lee] County." Similar to the provisions set forth in the second amendment to the Agreement, defendants again agreed "to ensure the solid waste disposal needs of [Lee] County are met in the future" if plaintiff agreed "to reaffirm its agreement, commitment, and determination that the [Lee County] Landfill will be the only landfill to be permitted in Lee County." Further, the third amendment provided, "All provisions of the Agreement, the First Amendment, and the Second Amendment not amended by this Third Amendment shall remain in full force and effect."

¶ 12 In November 2013, plaintiff adopted its 20-year update to the Plan. The 20-year update made no mention of its obligations pursuant to the parties' March 2012 amendment to the Agreement and no longer included any provision designating the Lee County Landfill as the "sole landfill" to be permitted in Lee County. However, the 20-year update provided plaintiff

would "continue to rely on the *** Lee County Landfill for disposal capacity for at least the next five years."

¶ 13       In June 2019, plaintiff adopted its 25-year update to the Plan, which recommended plaintiff "position itself as a regional depository for waste generated in northern Illinois." To that end, the 25-year update provided, "[t]he Lee County Landfill shall no longer be designated as the sole landfill to be permitted within [Lee] County," and the Lee County Board "retain[ed] the right to site a second landfill in Lee County," despite the Lee County Landfill's "projected *** 49 years of remaining capacity."

¶ 14       In November 2021, plaintiff filed the instant complaint for declaratory judgment. In its complaint, plaintiff argued defendants' "position concerning the terms of the Agreement is wrong" because the Agreement "always deferred to the plan *** concerning the designation of the [Lee County] Landfill as the sole landfill in Lee County." As a result, plaintiff sought the circuit court's declaration plaintiff had the right to consider an application for the siting of a second landfill within its geographic boundaries, and the Agreement, as amended, did not restrict any such right.

¶ 15       Defendants filed a motion for summary judgment in December 2021, asserting no genuine issue of material fact existed on whether plaintiff had the right to consider an application for the siting of a second landfill. Specifically, defendants asserted the Agreement, as well as its amendments, limited "[p]laintiff's right to permit the operation of any landfill at and within its geographic boundaries *** to allowing [defendants] to commence and continue to operate the subject landfill as the *'sole'* landfill within *** [p]laintiff's geographic boundaries." Thus, defendants argued, they were entitled to judgment in their favor.

¶ 16　　　　In February 2022, plaintiff filed a response to defendants' summary judgment motion, asserting "any promise to designate the [Lee County] Landfill as the 'sole landfill' was *** only for a limited amount of time." In support of its argument, plaintiff claimed the updates to the Plan "making the sole landfill designation ***, by their express terms, were each for a limited time period of 5 years," and "under the Illinois Environmental Protection Act [(Act) (415 ILCS 5/1 *et seq.* (West 2020))], the Plan controls over the *** Agreement." Therefore, according to plaintiff, defendants were not entitled to judgment in their favor because the Plan (1) had not designated the Lee County Landfill as the "sole landfill" to be permitted in Lee County since 2013 and (2) had called for a second landfill since 2019.

¶ 17　　　　In April 2022, the circuit court entered a written order granting defendants' summary judgment motion. In doing so, the court noted there "ha[d] been no allegation that [d]efendants are in breach of the Agreement or that the contract ha[d] been terminated." The court also considered the relevant provisions of the Act, the SWPRA, as well as the Local Solid Waste Disposal Act (LSWDA) (415 ILCS 10/1 *et seq.* (West 2020)), and determined plaintiff possessed "the right to make the Lee County Landfill an exclusive landfill within [Lee] County ***, even if such exclusive methods *** have an anti-competitive effect." However, despite plaintiff's "absolute authority" in deciding how it disposes of solid waste, the court found plaintiff "must also comply with the contracts entered into for such purpose." The court stated further:

>　　"While [plaintiff] can certainly make a policy determination that a second landfill is necessary, this policy[-]making authority does not give [it] the unfettered right to breach or terminate an existing contract. The contract [plaintiff] has entered with [defendants] *** requires such landfill to be operated by [defendants]. The

contract has not expired and there is no contention that Lee County Landfill is not continuing to be open and operating *** in Lee County. ***

*** [Plaintiff] is certainly free to set its policy and determine that it should place itself in a position to accept waste from northern Illinois and Wisconsin. It can also reach the policy decision to site another landfill. However, it must do so within the contractual obligations it has entered into with the Defendants."

¶ 18        This appeal followed.

¶ 19                                II. ANALYSIS

¶ 20        On appeal, plaintiff argues the circuit court erred in granting summary judgment in defendants' favor because it "wrongly assumed" an additional landfill would breach the Agreement between plaintiff and defendants. Specifically, plaintiff contends the Plan governs the Agreement and, therefore, the only promise made to defendants was a time-limited promise to amend the Plan to grant exclusive landfill status, pursuant to section 5(e) of the SWPRA (415 ILCS 15/5(e) (West 2020)), effective only until the next update to the Plan.

¶ 21        Section 2-1005(c) of the Code governs summary judgments, providing the circuit court must enter judgment where the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). A circuit court's ruling on a motion for summary judgment presents a question of law, and thus we apply the *de novo* standard of review. *Brotze v. City of Carlinville*, 2021 IL App (4th) 200369, ¶ 27, 183 N.E.3d 251.

¶ 22        The primary purpose of the Act is "to establish a unified, state-wide program supplemented by private remedies, to restore, protect and enhance the quality of the

environment, and to assure that adverse effects upon the environment are fully considered and borne by those who cause them." 415 ILCS 5/2(b) (West 2020). Section 39(a) of the Act tasks the Agency with responsibility to issue permits to applicants upon proof the "facility *** will not cause a violation of this Act or of regulations hereunder." 415 ILCS 5/39(a) (West 2020). The Act further authorizes the Agency to impose conditions necessary to accomplish the purposes of the Act. 415 ILCS 5/39(a) (West 2020).

¶ 23        Prior to November 1981, the Agency was generally entrusted with approving permits for the development of landfill facilities. *M.I.G. Investments, Inc. v. Environmental Protection Agency*, 122 Ill. 2d 392, 398, 523 N.E.2d 1, 3 (1988). However, as of November 1981, the Act was amended to provide "county and municipal governments a limited degree of control over new solid waste disposal sites within their boundaries." *M.I.G. Investments, Inc.*, 122 at 398 (citing Pub. Act 82-682 (eff. Nov. 12, 1981)). By March 1995, any county with a population less than 100,000 was required to "submit to the Agency an officially adopted plan for the management of municipal waste generated within its boundaries." 415 ILCS 15/4(a) (West 2020). A county's solid waste management plan must be updated and reviewed every five years, "and any necessary or appropriate revisions shall be submitted to the Agency for review and comment." 415 ILCS 15/5(e) (West 2020). As part of the permitting process, "units of local government may provide by *** contract or other means that the methods of disposal of solid waste shall be the exclusive methods of disposal to be allowed within their respective jurisdictions." 415 ILCS 10/6 (West 2020).

¶ 24        Pursuant to section 39.2(a) of the Act, local county boards "shall approve or disapprove the request for local siting approval" upon consideration of statutory criteria. 415 ILCS 5/39.2(a) (West 2020). If the proposed facility establishes the statutory criteria, "local

siting approval shall be granted." 415 ILCS 5/39.2(a) (West 2020). In relevant part, the enumerated criteria require that if the facility will be located "in a county where the county board has adopted a solid waste management plan ***, the facility is consistent with that plan." 415 ILCS 5/39.2(a)(viii) (West 2020). "At least one public hearing *** is to be held by the county board or governing body of the municipality no sooner than 90 days but no later than 120 days after the date on which it received the request for site approval." 415 ILCS 5/39.2(d) (West 2020). "If, prior to making a final local siting decision, a county board or governing body of a municipality has negotiated and entered into a host agreement with the local siting applicant, the terms and conditions of the host agreement *** shall be disclosed and made a part of the hearing record for that local siting proceeding." 415 ILCS 5/39.2(e) (West 2020).

¶ 25        As stated, plaintiff contends the Agreement is governed by the Plan. In support of its argument, plaintiff directs our attention to *Will County v. Village of Rockdale*, 2018 IL App (3d) 160463, 121 N.E.3d 468, and *Fox Moraine, LLC v. United City of Yorkville*, 2011 IL App (2d) 100017, 960 N.E.2d 1144. However, we find plaintiff's reliance on these cases to be misplaced, as neither supports plaintiff's position on appeal. For example, in *Will County*, the respondent, a refuse hauling business operating in Rockdale, Illinois, filed a request for siting approval to develop a pollution control transfer station. *Will County*, 2018 IL App (3d) 160463, ¶ 3. Following a public hearing on the matter, the Rockdale Board of Trustees (Rockdale Board) conditionally approved the respondent's application and found it satisfied the enumerated criteria set forth in section 39.2(a) of the Act. *Will County*, 2018 IL App (3d) 160463, ¶ 26. Thereafter, the petitioners, Will County and Waste Management of Illinois, Inc., filed separate petitions requesting the Illinois Pollution Control Board (Pollution Board) review the Rockdale Board's decision. *Will County*, 2018 IL App (3d) 160463, ¶ 30. The Pollution Board upheld the Rockdale

Board's approval of the respondent's application, finding the Rockdale Board's decision regarding subsections (i), (ii), (v), and (viii) of section 39.2(a) of the Act was not against the manifest weight of the evidence. *Will County*, 2018 IL App (3d) 160463, ¶ 30.

¶ 26 On appeal, the petitioners argued, in relevant part, the respondent's siting application was inconsistent with certain provisions of Will County's solid waste management plan and, therefore, not in compliance with section 39.2(a)(viii) of the Act. *Will County*, 2018 IL App (3d) 160463, ¶ 78. However, the Third District found "nothing in the record that shows that the application was not in compliance with the Will County [solid waste management plan]." *Will County*, 2018 IL App (3d) 160463, ¶ 81.

¶ 27 In *Fox Moraine, LLC*, the petitioner, Fox Moraine, LLC, appealed from the Pollution Board's order affirming the decision of the Yorkville City Council to deny the petitioner's siting application to construct a landfill in Kendall County for failing to satisfy the criteria set forth in subsections (i), (ii), (iii), (v), (vi), and (viii) of section 39.2(a) of the Act. *Fox Moraine, LLC*, 2011 IL App (2d) 100017, ¶ 1. On appeal, Kendall County and the Pollution Board argued "the county's May 2006 amendment to its 'Kendall County Solid Waste Management Plan' *** provided that landfills could be sited only within unincorporated areas of the county," and thus, the petitioner "failed to meet criterion (viii) because siting the facility within the city limits of Yorkville would violate the county's solid waste plan." *Fox Moraine, LLC*, 2011 IL App (2d) 100017, ¶ 105. In response, the petitioner asserted it satisfied the county plan's siting requirement because "it 'located' the landfill while the land was in unincorporated Kendall County" and "negotiated the host agreement with Yorkville before it annexed the property." *Fox Moraine, LLC*, 2011 IL App (2d) 100017, ¶ 108. Ultimately, the Second District "agree[d] with the [Pollution] Board and Yorkville that [the petitioner's] interpretation of the

amendment's use of the word 'located' [was] a strained one" and found, "[w]ithout any evidence to the contrary *** we are left with Kendall County's solid waste management plan amendment, which usurped the right of any municipality in Kendall County to site a solid waste management facility." *Fox Moraine, LLC*, 2011 IL App (2d) 100017, ¶¶ 107-08. Therefore, "the [Pollution] Board's decision that [the petitioner] failed to meet criterion (viii) was not against the manifest weight of the evidence." *Fox Moraine, LLC*, 2011 IL App (2d) 100017, ¶ 108.

¶ 28        Unlike the present case, the questions presented in *Will County* and *Fox Moraine, LLC*, turned on whether a prospective landfill's *siting application* complied with the enumerated criteria set forth in section 39.2(a) of the Act, which included compliance with each respective county's solid waste management plan. See 415 ILCS 5/39.2(a)(viii) (West 2020). Neither addresses the status of a county's plan in relation to existing contracts to which the county is a party. There also is no dispute over the Lee County Landfill's siting application. Although the court in *Fox Moraine, LLC*, provided some clarity with respect to the interplay between a county's solid waste management plan and the siting rights of *a municipality* within its boundaries, plaintiff fails to cite any authority—statutory or otherwise—supporting the type of primacy plaintiff seeks here.

¶ 29        However, in *Village of South Elgin v. Waste Management of Illinois, Inc.*, 348 Ill. App. 3d 929, 930, 810 N.E.2d 658, 661 (2004), the Second District analyzed a contract dispute within the statutory framework of section 39.2 of the Act. In that case, the defendant began operating a landfill near the village-plaintiff's eastern border in 1976. *Village of South Elgin*, 348 Ill. App. 3d at 931. By 1982, "it was determined that the facility could sustain operations for only 36 more months." *Village of South Elgin*, 348 Ill. App. 3d at 931. However, the defendant continued operating the landfill after receiving the requisite permit from the county and, in 1988,

the defendant sought to apply for another permit allowing the landfill to operate for another 15 years. *Village of South Elgin*, 348 Ill. App. 3d at 931.

¶ 30        Although the plaintiff initially opposed the landfill's 15-year extension, the parties eventually reached an agreement in which the plaintiff agreed not to oppose the extension at the Kane County Board hearing if, among other things, the defendant agreed to not expand the landfill further. *Village of South Elgin*, 348 Ill. App. 3d at 931. In 1998, the Kane County Board enacted a resolution granting the 15-year extension. *Village of South Elgin*, 348 Ill. App. 3d at 932. The resolution expressly incorporated the parties' agreement, which provided the landfill " 'shall not be expanded further.' " *Village of South Elgin*, 348 Ill. App. 3d at 932.  In 2002, the defendant filed an application with the county board to operate a transfer facility, which "would occupy about 9 acres of the 120-acre area that the landfill occupie[d]" and service over twice the number of trucks using the landfill each day. *Village of South Elgin*, 348 Ill. App. 3d at 932. Thereafter, the plaintiff filed a complaint alleging the defendant's proposed installation breached (1) the conditions imposed by the county and (2) the covenants the defendant agreed to with the plaintiff. *Village of South Elgin*, 348 Ill. App. 3d at 932.

¶ 31        On appeal, the Second District examined whether the doctrine of exhaustion of remedies barred the plaintiff from proceeding and noted the doctrine only applied "when an agency has exclusive jurisdiction over an action." *Village of South Elgin*, 348 Ill. App. 3d at 935. "If the legislature does intend to divest the circuit courts of jurisdiction over some matter, it must do so explicitly." *Village of South Elgin*, 348 Ill. App. 3d at 935. With those principles in mind, the Second District interpreted section 39.2(a) of the Act, which "vests county boards and other local governmental bodies with the authority to grant requests for local siting approval." *Village of South Elgin*, 348 Ill. App. 3d at 935. The court also considered section 39.2(g) of the Act,

- 12 -

which provides, in relevant part, " 'The siting approval procedures, criteria and appeal procedures provided for in this Act for new pollution control facilities shall be the exclusive siting procedures and rules and appeal procedures for facilities subject to such procedures.' " *Village of South Elgin*, 348 Ill. App. 3d at 935 (quoting 415 ILCS 5/39.2(g) (West 2002)). Thus, when read together, "sections 39.2(a) and 39.2(g) make plain the legislature's intent that county boards and like entities shall be the exclusive forum for passing on questions regarding the application of the Act to the siting of pollution control facilities." *Village of South Elgin*, 348 Ill. App. 3d at 935-36.

¶ 32    Ultimately, because the legislature exercised its ability to remove such matters from the circuit court's jurisdiction, the Second District determined, "to the extent [the] plaintiff's complaint is based upon [the] defendant's alleged violation of the Kane County resolution, it is subject to the requirement [the] plaintiff exhaust administrative remedies. However, [the] plaintiff's contract theory is not." *Village of South Elgin*, 348 Ill. App. 3d at 934. The court reasoned this was so because the plaintiff's "claim does not involve a right arising under the Act or from an action of the Kane County Board." *Village of South Elgin*, 348 Ill. App. 3d at 936. Rather, the plaintiff's claim stemmed from an alleged contract, which is "a traditional common-law cause of action," existing independently of the Act, and not part of the process of siting approval. *Village of South Elgin*, 348 Ill. App. 3d at 936-37. Because "section 39.2(g)'s plain language indicates that the legislature intended to vest the county board with jurisdiction to hear only matters specified in the Act," the court determined the legislature "did not intend that matters such as actions based on contracts, even if they actually could affect siting, be heard exclusively before the county board." *Village of South Elgin*, 348 Ill. App. 3d at 937. Therefore, despite the possible effect on the defendant's ability to utilize a portion of the landfill site for a

transfer station, the Second District found the defendant's "obligations under the alleged contract with [the] plaintiff *** collateral to the issue before the Kane County Board regarding whether it would be appropriate to permit a transfer facility at the *** site in accordance with the requirements of the Act." *Village of South Elgin*, 348 Ill. App. 3d at 937.

¶ 33 Here, there is little question "units of local government may provide by *** contract or other means that the methods of disposal of solid waste shall be the exclusive methods of disposal to be allowed within their respective jurisdictions." 415 ILCS 10/6 (West 2020). This is the action plaintiff took when it agreed to designate the Lee County Landfill as the "sole landfill" to be permitted within Lee County, so long as it remained open and operating and in compliance with the Agreement. However, aside from granting units of local government considerable discretion in how they manage solid waste and providing the relevant criteria for local siting approval, none of the above-cited statutes contain a provision granting a county the right to unilaterally terminate an existing contract. Rather, a contract claim is a traditional common-law cause of action, existing independently of the Act, and peripheral to the issue before the Lee County Board regarding whether it would be appropriate to site another landfill in Lee County. See *Village of South Elgin*, 348 Ill. App. 3d at 936-37. Plaintiff's contractual obligations regarding the Lee County Landfill's "sole landfill" designation stem from the Agreement. Therefore it follows, because a contract dispute does not involve a right arising under the Act (see *Village of South Elgin*, 348 Ill. App. 3d at 936), the Agreement, at least as of the present time, has not expired and remains enforceable. "A contract is to be construed as a whole, giving meaning and effect to every portion thereof, if possible, and not resorting to detached portions thereof standing alone." *Coles-Moultrie Electric Cooperative v. City of Sullivan*, 304 Ill. App. 3d 153, 159, 709 N.E.2d 249, 253 (1999). Plaintiff has not alleged a

breach of the Agreement or that the Lee County Landfill is not continuing to be open and operating in Lee County. While plaintiff is certainly free to determine its policies and place itself in a position to accept waste from other jurisdictions, "it must do so within the contractual obligations it has entered into with *** [d]efendants."

¶ 34    Accordingly, we find the circuit court did not err by concluding no colorable argument exists plaintiff has the statutory right to unilaterally terminate the Agreement with defendants and consider an application for the siting of a second landfill. Therefore, the circuit court properly granted defendants' motion for summary judgment as there exists no genuine issue of material fact, and defendants were entitled to judgment as a matter of law. See *Illinois Environmental Protection Agency v. Illinois Pollution Control Board*, 2018 IL App (4th) 170144, ¶ 20, 142 N.E.3d 737.

¶ 35    In closing, we commend the circuit court for providing a thoughtful and comprehensive written order summarizing the evidence and detailing the court's reasoning. The order provided valuable insight into the court's thought process, which this court found most helpful.

¶ 36                    III. CONCLUSION

¶ 37    For the foregoing reasons, we affirm the circuit court's judgment.

¶ 38    Affirmed.